**WASHINGTON SQUARE POST #1212 AMERICAN LEGION, Edward Semenza, Nicholas Compiglia, Patrick Petrucelli, William Genovese, Steven J. Gambino, Thomas Stio, John De Dominici, Joseph Gigliano, and Salvatore Ianniello, Jr., Plaintiffs–Appellees,**

v.

**Denis MADURO, Paul Meyer, Susan Schnitzer, Michael Luzzo, Cynthie Sumner, Stanley Nye, Thomas Finn, Richard McHenry, William Jenkins, and David Stone, Agents of the Federal Bureau of Investigation, Defendants–Appellants,**

**The City of New York, Benjamin Ward, Police Commissioner, City of New York, Denis Maduro, Paul Meyer, Susan Schnitzer, Michael Luzzo, Cynthie Sumner, Stanley Nye, Thomas Finn, Richard McHenry, William Jenkins,**

and David Stone, Agents of the Federal Bureau of Investigation, Lt. William J. Shannon, Sgt. Joseph Caiola, Det. Carl Babara, Det. Patrick Purcell, Det. Steve Gilbert, Det. Joseph Blik, Det. William Pavone, and Det. Jose Flores, Police Officers of the City of New York, Defendants.

No. 890, Docket 89–6243.

United States Court of Appeals, Second Circuit.

Argued March 8, 1990.

Decided June 28, 1990.

Jed Rubenfeld, Asst. U.S. Atty., Southern District of New York, New York City (Otto G. Obermaier, U.S. Atty., for the Southern District of New York, Marla Alhadeff, Asst. U.S. Atty., Southern District of New York, New York City, of counsel), for defendants-appellants.

William M. Kunstler, Center for Constitutional Rights, New York City (Ronald L. Kuby, Center for Constitutional Rights, New York City, of counsel), for plaintiffs-appellees.

Before KAUFMAN, MESKILL and ALTIMARI, Circuit Judges.

MESKILL, Circuit Judge:

Ten Special Agents of the Federal Bureau of Investigation appeal from that portion of an order of the United States District Court for the Southern District of New York, Leisure, J., denying their motion for summary judgment on the issue of qualified immunity from civil liability under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), for their warrantless entry into Washington Square Post # 1212. Summary judgment was denied because the district court concluded that defendants-appellants' knowledge concerning the selective admission policy of Post # 1212 was in dispute.

Reversed and remanded.

## BACKGROUND

This action arises out of a joint federal/state investigation into the January

1986 murder of New York City police Detective Anthony Vendetti. As the facts of this case are thoroughly set forth in the district court's opinion, reported at 720 F.Supp. 337 (S.D.N.Y.1989), we shall recount only those relevant to the present appeal.

On January 21, 1986, Detective Anthony Vendetti and his partner Detective Kathleen Burke, both of whom were on assignment with the Federal Bureau of Investigation (FBI)—New York City Police Department (NYPD) Joint Organized Crime Task Force (JOCTF), were shot while conducting surveillance of Frederick Giovanelli, an alleged member of the Genovese organized crime family. Vendetti died of his wounds. Burke, who was seriously wounded, later identified Giovanelli and Carmine Gaultiere, also allegedly associated with the Genovese family, as two of the perpetrators.

In an effort to apprehend Gaultiere, a list of so-called "social clubs" allegedly frequented by members of the Genovese family was compiled and searches of approximately thirty such locations, including American Legion Post # 1212 (the Post), were planned by members of the JOCTF. Although Rule 11 of the Post's Rules and Regulations specifically limits admittance to "members," search warrants were considered to be unnecessary because, in the experience of the JOCTF members and their supervisors, social clubs like the Post generally did not enforce their selective admission policies.

At approximately 6:00 p.m. on January 23, 1986, JOCTF Squad Four members, all wearing blue windbreakers with either the letters "FBI" or "NYPD" prominently displayed, entered the Post, allegedly with their guns drawn, and orally identified themselves. Post patrons were then lined up against the walls, frisked for weapons and identification, and were interviewed and photographed. Upon completion of the search between 6:40 and 6:45 p.m., the JOCTF members learned that Gaultiere had been arrested approximately one hour earlier.

Thereafter, on June 6, 1986, certain members of the Post who were present during the search, filed suit against various federal and city defendants alleging, *inter alia*, that their constitutional rights were violated as a result of the warrantless entry and subsequent search. *See Bivens,* 403 U.S. 388, 91 S.Ct. 1999; 42 U.S.C. § 1983. The federal defendants are John Hogan, Special Agent in charge of the New York JOCTF office, ten Special Agents of the FBI who were involved in the JOCTF search (the Agents) and FBI photographer Jin Moy. The city defendants are the City of New York, Police Commissioner Benjamin Ward and eight members of the NYPD. The federal and city defendants responded by filing a motion to dismiss or, in the alternative, for summary judgment challenging the sufficiency of each of plaintiffs' numerous claims on one or more grounds.

In an opinion and order dated August 31, 1989, Judge Leisure dismissed all claims against the City of New York, Commissioner Ward and Special Agent Hogan. 720 F.Supp. at 342–48, 351–54. With the exception of plaintiffs' Fourth Amendment claim, all claims against the Agents were also dismissed on summary judgment. *Id.* at 342–43, 351–54. However, the Agents' motion for summary judgment on the merits of the Fourth Amendment claim and for qualified immunity were denied because it was a disputed issue whether the Post was, in fact, open to the public, thus justifying a warrantless entry, or closed to non-Post members, in which case it was clearly established that a warrant was necessary. *Id.* at 348–51. The denial of summary judgment was based solely on the Agents' entry; the court did not address the Agents' conduct once inside the Post. *Id.* at 351 n. 10. The Agents now appeal the denial of their claim of qualified immunity from civil liability on plaintiffs' Fourth Amendment claim. No cross-appeals from the aforementioned dismissals were filed.

## DISCUSSION

 Qualified immunity has long shielded government officials performing discretionary functions from civil damages liability "insofar as their conduct does not violate clearly established statutory or con-

stitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). In the oft-quoted words of Justice Scalia in *Anderson v. Creighton,* 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987), "whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action ... assessed in light of the legal rules that were 'clearly established' at the time it was taken." *Id.* at 639, 107 S.Ct. at 3038 (quoting *Harlow,* 457 U.S. at 819, 818, 102 S.Ct. at 2739, 2738); *accord Krause v. Bennett,* 887 F.2d 362, 368 (2d Cir.1989); *Robison v. Via,* 821 F.2d 913, 920–21 (2d Cir.1987). Specifically, with respect to alleged warrant clause violations, the relevant inquiry focuses on "the objective (albeit fact-specific) question whether a reasonable officer could have believed [the] ... warrantless search to be lawful, in light of clearly established law and the information the searching officers possessed." *Anderson,* 483 U.S. at 641, 107 S.Ct. at 3040.

Recognizing that the " 'Fourth Amendment protects people, not places,' " *Terry v. Ohio,* 392 U.S. 1, 9, 88 S.Ct. 1868, 1873, 20 L.Ed.2d 889 (1968) (quoting *Katz v. United States,* 389 U.S. 347, 351, 88 S.Ct. 507, 511, 19 L.Ed.2d 576 (1967)), the district court found the law "clear" that absent exigent circumstances, a search warrant is generally required to enter a commercial establishment that is not open to the public. 720 F.Supp. at 349; *see New York v. Burger,* 482 U.S. 691, 699, 107 S.Ct. 2636, 2646, 96 L.Ed.2d 601 (1987); *Marshall v. Barlow's, Inc.,* 436 U.S. 307, 311, 98 S.Ct. 1816, 1819, 56 L.Ed.2d 305 (1978); *United States v. Chadwick,* 433 U.S. 1, 11, 97 S.Ct. 2476, 2483, 53 L.Ed.2d 538 (1977); *See v. City of Seattle,* 387 U.S. 541, 546, 87 S.Ct. 1737, 1741, 18 L.Ed.2d 943 (1967); *see also United States v. Rahme,* 813 F.2d 31, 34 (2d Cir.1987) (right to exclude others is an "important factor" militating in favor of a legitimate expectation of privacy). Conversely, the court concluded, "a search warrant is not needed if the location is open to the public." 720 F.Supp. at 349; *see, e.g., Katz,* 389 U.S. at 351, 88 S.Ct. at 511 (that which is "knowingly expose[d] to the public ... is not a subject of Fourth Amendment protection"); *United States v. Barrios–Moriera,* 872 F.2d 12, 14 (2d Cir.) ("test to determine whether a person can claim Fourth Amendment protection in a given place depends upon whether the person has a legitimate subjective expectation of privacy in that area that society is prepared to accept as objectively reasonable"), *cert. denied,* —— U.S. ——, 110 S.Ct. 364, 107 L.Ed.2d 350 (1989); *United States v. Paulino,* 850 F.2d 93, 97 (2d Cir.1988) (same), *cert. denied,* —— U.S. ——, 109 S.Ct. 1967, 104 L.Ed.2d 435 (1989). On appeal, the Agents apparently concede that the district court's legal analysis of the clarity of Fourth Amendment law was correct.

Nevertheless, the Agents argue, as they did in the district court, that they are entitled to qualified immunity "because they reasonably believed that the Post was open to the public and therefore could be entered without a warrant." In support of this contention, the Agents direct our attention to their affidavits, which, in the words of Supervising Agent Maduro, state that "[b]ecause the type of social clubs which we were to visit are, in the experience of the JOCTF, open to the public, we did not believe search warrants were required." The plaintiffs, on the other hand, contend that the Post is a private club to which, in the absence of consent, only members and their guests are admitted. In support of plaintiffs' selective admission claim, patrons Edward J. Semenza and John J. Barone both submitted affidavits expressing their familiarity with Rule 11 of the Post's Rules and Regulations, which provides: "No Outsiders Or Non–Members Will Be Admitted Unless Accompanied By A Member." In addition, Semenza stated that "[w]henever the Post is open for business, there is always an officer present to stop and check every person, other than members and their guests, before allowing them to enter upon or remain on the premises."

The district court, apparently preoccupied with the disputed issue "whether, in fact, the Post was open to the public," 720 F.Supp. at 350, felt "constrained" to deny defendants' motion for summary judgment on their claim of qualified immunity because "the knowledge of defendants concerning the admission policy of the Post [wa]s in dispute." *Id.* at 351, 350.

While these factual disputes are indeed at the core of this litigation and clearly justify Judge Leisure's denial of summary judgment on the merits of plaintiffs' Fourth Amendment claim, we do not believe that, in the context of a motion for summary judgment, the more narrow qualified immunity analysis turned on any disputed issues of fact. Consequently, the district court's erroneous reliance on underlying factual disputes to reject the Agents' immunity defense represents a misapplication of law and, as such, is subject to interlocutory review.[1]

At the threshold, we emphasize that the question of qualified immunity is separate from the merits of the underlying action. *See Mitchell v. Forsyth,* 472 U.S. 511, 527–29, 105 S.Ct. 2806, 2816–17, 86 L.Ed.2d 411 (1985). Moreover, in the procedural context of summary judgment, "factual allegations in the pleadings of the party opposing the motion ..., if supported by affidavits or other evidentiary material, should be regarded as true by the district court." *Burtnieks v. City of New York,* 716 F.2d 982, 983–84 (2d Cir.1983); *accord Runge v. Dove,* 857 F.2d 469, 471 & n. 1 (8th Cir.1988); *First Nat'l Bank of Cincinnati v. Pepper,* 454 F.2d 626, 629 (2d Cir. 1972). *See generally* 10 C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2716, at 643–46 (2d ed. 1983). The *de facto* admission policy of the Post is therefore irrelevant for purposes of qualified immunity analysis; it is simply as-

sumed that the Post's selective admission policy was enforced. *Cf. Dobosz v. Walsh,* 892 F.2d 1135, 1141 (2d Cir.1989) (alleged retaliatory motive assumed for purposes of immunity analysis with respect to plaintiff's First Amendment claim); *Musso v. Hourigan,* 836 F.2d 736, 742–43 (2d Cir. 1988) (same).

Furthermore, notwithstanding the district court's conclusion to the contrary, the knowledge of the Agents concerning the admission policy of the Post was *not* in dispute. The Agents, admittedly, had no familiarity with either the policies or practices of any of the three locations assigned to them. Their affidavits establish only that, in their investigative experience, social clubs of the type at issue were *in general* open to the public. Based on the record before us, which indicates that the Agents had absolutely *no* specific knowledge concerning the admission policy of the Post, we cannot conclude, as did the district court, that the state of the Agents' knowledge was a disputed factual issue.

Thus, in the context of a motion for summary judgment, the relevant inquiry is whether the federal defendants are immune from suit *if* the facts are as asserted by the Post—*i.e.,* whether, in light of clearly established law and the information possessed by the defendants, it was objectively reasonable for the Agents to believe that their warrantless entry into the Post was lawful; the Agents' subjective beliefs concerning the legality of the search are irrelevant. *See Anderson,* 483 U.S. at 641, 107 S.Ct. at 3039; *Dube v. State Univ. of New York,* 900 F.2d 587, 597 (2d Cir.1990); *Musso,* 836 F.2d at 742–43; *Robison,* 821 F.2d at 920–21. Although the district court failed to address this question, and, instead, erroneously rejected the Agents' claim of immunity based on nonexistent or,

---

1. In this regard we note that qualified immunity "is an *immunity from suit* rather than a mere defense to liability ... [and] is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985). Accordingly, we believe the reasoning that underlies the immediate appealability of an order denying a claim of qualified immunity "to the extent that

it turns on an issue of law," *id.* at 530, applies with equal force to a denial that turns on a fundamental misapplication of law. *Cf. United States v. Rexach,* 896 F.2d 710, 713 (2d Cir.1990) ("Whether the district court applied correct principles is a matter of law that we may review *de novo.*") (citing *Pullman–Standard v. Swint,* 456 U.S. 273, 287, 102 S.Ct. 1781, 1789, 72 L.Ed.2d 66 (1982)).

 

for summary judgment purposes, irrelevant factual disputes, we conclude that, as a matter of law, the aforeposited question must be answered in the affirmative.

In this regard we note that although the Agents concededly had no specific knowledge concerning the admission policy of the Post, their investigative experience with related social clubs indicated that official membership was *not* required for entry, nor was public access limited. Moreover, it is undisputed that Supervising Agent Maduro specifically instructed the members of JOCTF Squad Four "that the [social clubs they] were to visit were ... accessible to the public and therefore no search warrants were necessary." Clearly, the Agents, with a total of approximately fifty-eight years of FBI experience, were not only entitled to rely on the implications of the information known to them in assessing the necessity of securing a warrant, *see Krause*, 887 F.2d at 371; *see also Floyd v. Farrell*, 765 F.2d 1, 5–6 (1st Cir.1985), but were also entitled to rely on the reasonable instructions of their superior in the chain of command, particularly where those instructions were not inconsistent with their personal knowledge and experience. There was after all no guard barring entry and the door was apparently unlocked. We therefore conclude that, based on the information possessed by the Agents, it was objectively reasonable for them to believe that their warrantless entry into the Post was lawful. The mere fact that the words "Members Only" may have been displayed on an awning above the entrance to the Post does not dictate a contrary result. Consequently, the Agents are qualifiedly immune from suit as a matter of law, and their motion for summary judgment should have been granted.

### CONCLUSION

For the reasons stated, we reverse that portion of the district court's order that denied defendants' motion for summary judgment on their claim of qualified immunity and remand the case with instructions to grant the Agents' motion and to enter judgment accordingly.