WASHINGTON SQUARE POST #1212, American Legion, Edward Semenza, Nicholas Compiglia, Patrick Petrucelli, William Genovese, Steven J. Gambino, Thomas Stio, John De Domenici, Joseph Cigliano and Salvatore Ianniello, Jr., Plaintiffs,

v.

The CITY OF NEW YORK; Benjamin Ward, Police Commissioner, City of New York; John L. Hogan, Assistant Director of the Federal Bureau of Investigation; Denis Maduro, Paul Meyer, Susan Schnitzer, Michael Luzzo, Cynthie Sumner, Stanley Nye, Thomas Finn, Richard McHenry, William Jenkins, and David Stone, Agents of the Federal Bureau of Investigation; Lt. William J. Shannon, Sgt. Joseph Caiola, Det. Carl Barbara, Det. Patrick Purcell, Det. Steve Gilbert, Det. Joseph Blik, Det. William Pavone, and Det. Jose Flores, Police Officers of the City of New York, Defendants.

No. 86 Civ. 5018 (PKL).

United States District Court,
S.D. New York.

Aug. 31, 1992.

William M. Kunstler, New York City, for plaintiffs.

O. Peter Sherwood, Corp. Counsel, City of New York, New York City (Elisabeth A. Palladino, of counsel), for City Defendants.

## ORDER AND OPINION

LEISURE, District Judge:

This is a civil rights action arising out of a warrantless entry and search of American Legion Post #1212 (the "Post"), which was conducted in connection with an investigation into the January 1986 shootings of two detectives of the New York City Police Department (the "NYPD"). All of plaintiffs' claims against the City of New York (the "City"); Benjamin Ward, Police Commissioner of the City (the "Commissioner"); John L. Hogan ("Hogan"), Assistant Di-

rector of the Federal Bureau of Investigation (the "FBI"); and Denis Maduro, Paul Meyer, Susan Schnitzer, Michael Luzzo, Cynthie Sumner, Stanley Nye, Thomas Finn, Richard McHenry, William Jenkins, and David Stone, Agents of the FBI (collectively, the "individual federal defendants") have been dismissed.

The remaining claims in this action are plaintiffs' federal civil rights claim and pendent state law tort claims against defendants William J. Shannon, Joseph Caiola, Carl Barbara, Patrick Purcell, Steve Gilbert, Joseph Blik, William Pavone, and Jose Flores (collectively, the "individual City defendants"). The individual City defendants have now moved pursuant to Fed.R.Civ.P. 56 for summary judgment on plaintiffs' remaining claims against them. For the reasons stated below, the individual City defendants' motion is granted in its entirety, and plaintiffs' complaint is dismissed.[1]

### Background [2]

The individual City defendants were members of the NYPD and were assigned to the Organized Crime Investigation Division (the "OCID") in January 1986. Certain squads within the OCID work in joint task forces with the FBI and primarily investigate organized crime and its related activity. Each task force consists of members of the NYPD and agents of the FBI. At the time of the acts alleged by plaintiffs in their complaint, the individual City defendants were members of NYPD–FBI Joint Organized Crime Task Force # 4 ("JOCTF # 4"), which investigates labor racketeering within a criminal enterprise.

On January 21, 1986, NYPD Detective Anthony J. Venditti ("Venditti") was killed and his partner, Detective Kathleen Burke ("Burke"), was seriously wounded by persons suspected of being members of organized crime. Detectives Venditti and Burke were members of the FBI–NYPD Joint Organized Crime Task Force assigned to the so-called "Genovese crime family." At the time of the shootings, Venditti and Burke were conducting a surveillance of Frederick Giovanelli ("Giovanelli"), said to be a member of the Genovese crime family. After the shooting, Burke identified Giovanelli and Carmine Gaultiere ("Gaultiere"), also said to be a member of the Genovese crime family, as two of the persons involved in the shootings.

Because Venditti and Burke were shot in the course of a joint task force investigation, the shootings triggered a joint task force search for their assailants. By January 23, 1986, Giovanelli was in custody, but Gaultiere was still at large. It was believed that Gaultiere would be either at his home, which was under surveillance, or at one of the Genovese crime family locations, or moving among such locations. A list of "social clubs" known to be frequented by members of the Genovese crime family, at which it was believed Gaultiere or witnesses to the shooting might be found, was prepared. Various joint task forces were assigned to visit specific locations to find Gaultiere, to obtain information regarding his whereabouts, and/or to locate witnesses to the shootings.

At a meeting held by FBI and NYPD supervisors, it was determined that no search warrants would be required to permit entry into any of the targeted locations

---

**1.** In connection with its motion for summary judgment, the individual City defendants have complied fully with the requirements of Civil Rule 3(g) of the Local Rules of this District. In accordance with Rule 3(g), they have submitted a detailed statement of material facts as to which they contend there are no genuine issues to be tried. Plaintiffs have not submitted any Rule 3(g) statement in opposition to the individual City defendants' contentions. Rule 3(g) unequivocally states that "all material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party." Accordingly, the Court deems all of the facts set forth in the individual City defendants' Rule 3(g) statement to be admitted, and the Court's discussion of the background facts in this opinion is drawn largely from the individual City defendants' Rule 3(g) statement.

**2.** A more complete discussion of the factual background of this action is contained in this Court's previous opinion, *Washington Square Post # 1212, American Legion v. City of New York*, 720 F.Supp. 337 (S.D.N.Y.1989), *rev'd in part*, 907 F.2d 1288 (2d Cir.1990), familiarity with which is assumed.

because it was believed that such locations were open to the public. Many members of the task force had had prior investigative experience with social clubs. In their experience, such social clubs in general are open to the public. None of the task force members had ever been told, throughout their experience, by patrons of such social clubs that they needed a search warrant to enter the premises.

The Post was included on the list of Genovese social clubs. A former member of the Genovese Task Force had identified the Post as a location from which certain Genovese gambling operations were run and which was frequented by Genovese associates. Early in the evening of January 23, 1986, defendants Shannon and Denis Maduro ("Maduro") (one of the individual federal defendants) held a meeting of JOCTF # 4 in order to discuss the search for Gaultiere. By this time, all of the NYPD members of JOCTF # 4 were aware of the circumstances surrounding the shootings; the individual City defendants present at this meeting were Caiola, Barbara, Purcell, Gilbert, Pavone, and Flores. At this meeting, the JOCTF # 4 members were instructed that they would be going to various organized crime social clubs in an effort to locate and apprehend Gaultiere and to locate witnesses with information concerning the shootings or Gaultiere's whereabouts. Specifically, the JOCTF # 4 members were instructed to enter each location and identify themselves as law enforcement personnel and to secure the premises and ascertain that any persons present were not armed. They were to identify other possible witnesses to the shooting and to interview and photograph any patrons present, with their consent. A photograph of Gaultiere was distributed, and the number on the license plate of the car the Gaultiere had been driving on the evening of the shootings was provided. Both Shannon and Maduro warned the JOCTF # 4 members that the investigation potentially was dangerous and emphasized that their safety was a paramount consideration. Each JOCTF # 4 member was advised to wear his or her bullet-proof vest and "raid" jackets, which had either "FBI" or "POLICE" printed on them in bold yellow letters on the front and back.

JOCTF # 4 was assigned to visit three locations: 229 Sullivan Street, 179 Sullivan Street, and 101 Thompson Street. None of the individual City defendants had any prior investigative experience at any of these locations. The first location that they visited was 229 Sullivan Street. Because this location was so small, only a few of the JOCTF # 4 members were instructed to complete their assignments there. The other members were instructed to move on to the second location, at 179 Sullivan Street—the location of the Post. When the first group of JOCTF # 4 members arrived at 179 Sullivan Street, there was some confusion about whether this was the correct address. One of the individual federal defendants radioed the command post to check on this matter, and was informed that it was the location of the Post.

The JOCTF # 4's arrival at the Post caused several persons who were inside the Post to come outside in order to ascertain what was happening. One of the patrons invited the JOCTF # 4 members into the Post. Upon their entry into the Post, the JOCTF # 4 members identified themselves as law enforcement personnel. The JOCTF # 4 members directed the patrons inside the Post to stand facing one wall with their hands on the wall, in order to prevent them from reaching for weapons. Tables and chairs were pushed away from the wall to clear the area; although some chairs were knocked over, none was damaged in any way. Each patron was frisked for weapons and then briefly interviewed and photographed; each patron was allowed to sit while being interviewed. Other JOCTF # 4 members were busy securing the premises at this time. Some remained in or by the front door to ensure that no one entered or left the premises and others moved into the back of the location. A short time after the investigation was underway at 179 Sullivan Street, other JOCTF # 4 members, having completed their assignments at the first location, arrived.

During the investigation, someone noticed a door behind the bar that had a

stairway behind it leading up to another floor. Several JOCTF # 4 members went up the stairs to secure the floor. A gun case containing several rifles was found on this floor. Defendant Gilbert examined these weapons in order to determine whether they were operable; they were not. A similar gun case was found on the first floor, containing a machine gun, several rifles, and a hand grenade. Defendant Purcell examined the weapons in this case and determined that they too were not operable.

The investigation at 179 Sullivan Street was completed at about 6:45 p.m. At that time, the JOCTF # 4 members proceeded to the next location. The individual defendants did not use any physical force on any patron at 179 Sullivan Street for any purpose, nor did they physically threaten anyone in anyway while at 179 Sullivan Street, and did not observe anyone else do so. Furthermore, the individual City defendants did not damage, deface, destroy, or remove any property belonging to the Post or its patrons and did not observe anyone else do so.

Plaintiffs commenced this action in June 1986. Plaintiffs' complaint asserts numerous claims, including (1) federal claims pursuant to (a) 42 U.S.C. §§ 1983, 1985, 1986, and 1988; (b) the Supreme Court's decision in *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971); and (c) the 1st, 4th, 5th, 6th, 8th, and 14th Amendments of the United States Constitution and (2) pendent state law claims for assault, battery, and intentional infliction of emotional distress. In their complaint, plaintiffs claim that they are entitled to compensatory and punitive damages, injunctive relief, and a declaratory judgment.

Defendants subsequently moved to dismiss plaintiffs' complaint for failure to state a claim upon which relief can be granted pursuant to Fed.R.Civ.P. 12(b)(6) or, in the alternative, for summary judgment pursuant to Fed.R.Civ.P. 56. On August 31, 1989, this Court issued an Order and Opinion in which the Court granted summary judgment in favor of the City;

the Commissioner; Hogan; the individual federal defendants, on all claims with the exception of plaintiffs' *Bivens* claim for violation of their 4th Amendment rights; and the individual City defendants, on all claims with the exception of plaintiffs' § 1983 claim for violation of their 4th Amendment rights and plaintiffs' pendent state law tort claims, which were not then challenged by the individual City defendants. *See Washington Square Post # 1212,* 720 F.Supp. at 343, 354–55.

With respect to plaintiffs' *Bivens* claim against the individual federal defendants, the Court denied the motion for summary judgment on the ground that there existed genuine issues of material fact with respect to both the merits of the claim and the availability of the doctrine of qualified immunity. *Id.* 720 F.Supp. at 348–51. The individual federal defendants appealed the Court's denial of their motion for summary judgment, and on June 28, 1990, the Second Circuit issued an opinion reversing the Court's denial of the summary judgment motion. *See Washington Square Post # 1212,* 907 F.2d at 1292–93. The Second Circuit found that there were no genuine issues of material fact in dispute with respect to the question of qualified immunity; specifically, the Second Circuit concluded that

> based on the information possessed by the [individual federal defendants], it was objectively reasonable for them to believe that their warrantless entry into the Post was lawful.... Consequently, the [individual federal defendants] are qualifiedly immune from suit as a matter of law, and their motion for summary judgment should have been granted.

*Id.* at 1293.

The remaining claims in this action are (1) plaintiffs' § 1983 claim, alleging violations of plaintiffs' 4th Amendment rights, against the individual City defendants and (2) plaintiffs' pendent state law tort claims, for assault, battery, and intentional infliction of emotional distress, against the individual City defendants. The individual City defendants have now moved pursuant to Fed.R.Civ.P. 56 for summary judgment on

plaintiffs' remaining claims. The individual City defendants contend that (1) with respect to the § 1983 claim, they are qualifiedly immune from suit for the same reasons that the Second Circuit found that the individual federal defendants were qualifiedly immune and (2) with respect to the pendent state law tort claims, summary judgment is appropriate because plaintiffs have failed to satisfy the notice of claim requirements of N.Y.Gen.Mun.Law § 50–e and § 50–i.

## Discussion

### I. Standard for Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986); *Lang v. Retirement Living Publishing Co.,* 949 F.2d 576, 580 (2d Cir. 1991). Summary judgment "is appropriate only 'after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's cause, and on which that party will bear the burden of proof at trial.'" *Thornton v. Syracuse Savings Bank,* 961 F.2d 1042, 1046 (2d Cir.1992) (quoting *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552); *accord Irvin Industries, Inc. v. Goodyear Aerospace Corp.,* 974 F.2d 241, 244 (2d Cir.1992).

"In deciding whether to grant summary judgment all inferences drawn from the materials submitted to the trial court are viewed in a light most favorable to the party opposing the motion. The nonmovant's allegations are taken as true and it receives the benefit of the doubt when its assertions conflict with those of the movant." *Cruden v. Bank of New York,* 957 F.2d 961, 975 (2d Cir.1992). "Only when no reasonable trier of fact could find in favor of the nonmoving party should summary judgment be granted." *Id.; accord Taggart v. Time Inc.,* 924 F.2d 43, 46 (2d Cir.1991); *see also Lang,* 949 F.2d at 580 ("In determining how a reasonable jury would decide, the court must resolve all ambiguities and draw all inferences against the moving party."); *Binder v. Long Island Lighting Co.,* 933 F.2d 187, 191 (2d Cir.1991) ("Viewing the evidence produced in the light most favorable to the nonmovant, if a rational trier could not find for the nonmovant, then there is no genuine issue of material fact and entry of summary judgment is appropriate.").

The substantive law governing the case will identify those facts that are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there does indeed exist a genuine issue for trial." *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510.

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion," and identifying which materials "it believes demonstrate the absence of a genuine issue of material fact." *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552. Once a motion for summary judgment is properly made, however, the burden then shifts to the non-moving party, which "'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511 (quoting Fed.R.Civ.P. 56(e)). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson,* 477 U.S. at 247–48, 106 S.Ct. at 2509–10 (emphasis in original). "Conclusory allegations will not suffice to create a genuine issue. There must be more than a

'scintilla of evidence,' and more than 'some metaphysical doubt as to the material facts.'" *Delaware & Hudson Railway Co. v. Consolidated Rail Corp.*, 902 F.2d 174, 178 (2d Cir.1990) (quoting *Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512 and *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986)). "The non-movant cannot escape summary judgment merely by vaguely asserting the existence of some unspecified disputed material facts, or defeat the motion through mere speculation or conjecture." *Western World Insurance Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir.1990) (quotations omitted).

## II. Individual City Defendants' Motion for Summary Judgment

■ The Court notes at the outset that plaintiffs have failed to comply with Civil Rule 3(b) of the Local Rules of this District. Local Civil Rule 3(b) provides that a party opposing a motion "shall serve and file with the papers in opposition to the motion ... an answering memorandum ... setting forth the points and authorities relied upon in opposition. Failure to comply may be deemed sufficient cause for ... the granting of the motion by default." Plaintiffs have submitted a brief Affirmation of counsel, without any meaningful discussion of any legal authorities upon which plaintiffs are relying, in opposition to the individual City defendants' summary judgment motion, but have not submitted to the Court a memorandum of law. Plaintiffs' failure to comply with Local Civil Rule 3(b) constitutes sufficient cause to grant the motion for summary judgment by default; nonetheless, the Court will examine the merits of the motion.

The individual City defendants argue that they are entitled to summary judgment on plaintiffs' § 1983 claim for violations of their 4th Amendment rights because they are qualifiedly immune from suit, for the same reasons that the Second Circuit concluded that the individual federal defendants were qualifiedly immune from suit on plaintiffs' *Bivens* claim. The individual federal defendants had argued

that they were qualifiedly immune because they reasonably believed that the Post was open to the public and therefore could be entered without a warrant. The Second Circuit found that the individual federal defendants were qualifiedly immune because there were no genuine issues of material fact in dispute with respect to whether, in light of clearly established law and the information that the defendants possessed, it was objectively reasonable for them to believe that their warrantless entry into the Post was lawful. 907 F.2d at 1292–93. Specifically, the Second Circuit noted that

> although the [individual federal defendants] concededly had no specific knowledge concerning the admission policy of the Post, their investigative experience with related social clubs indicated that official membership was *not* required for entry, nor was public access limited. Moreover, it is undisputed that Supervising Agent Maduro specifically instructed the members of [JOCTF # 4] "that the [social clubs they] were to visit were ... accessible to the public and therefore no search warrants were necessary." Clearly, the [individual federal defendants], with a total of approximately fifty-eight years of FBI experience, were not only entitled to rely on the implications of the information known to them in assessing the necessity of securing a warrant, but were also entitled to rely on the reasonable instructions of their superior in the chain of command, particularly where those instructions were not inconsistent with their personal knowledge and experience. There was after all no guard barring entry and the door was apparently unlocked. We therefore conclude that, based on the information possessed by the [individual federal defendants], it was objectively reasonable for them to believe that their warrantless entry into the Post was lawful.

*Id.* at 1293 (citations omitted; emphasis in original).

The individual City defendants now argue that it was just as objectively reasonable for them to have believed that their

warrantless entry into the Post was lawful, because they too believed that the Post was open to the public and therefore could be entered without a warrant. In the instant action, it is undisputed (and admitted) that FBI and NYPD supervisors had previously determined that no search warrants would be required to permit entry into any of the targeted social clubs, because it was believed that such locations were open to the public; that many JOCTF # 4 members had had prior investigative experience with social clubs, and in their experience, such social clubs in general are open to the public; and that none of the JOCTF # 4 members had ever been told by the patrons of the social clubs that they needed a search warrant to enter the premises. In addition, JOCTF # 4 included both FBI agents and NYPD members, including the individual City defendants, and plaintiffs do not contend that the information that the individual City defendants possessed was significantly different from the information possessed by the individual federal defendants in connection with their warrantless entry into the Post. The Court finds that, for reasons similar to those articulated by the Second Circuit with respect to the individual federal defendants, the individual City defendants are qualifiedly immune from suit on plaintiffs' § 1983 claim for alleged violations of their 4th Amendment rights; based upon the information possessed by the individual City defendants, it was objectively reasonable for them to believe that their warrantless entry into the Post was lawful.[3] The Court thus concludes that there are no genuine issues of material fact in dispute in connection with plaintiffs' § 1983 claim, and the individual City defendants are entitled to judgment on the § 1983 claim as a matter of law.

■ Plaintiffs do not dispute the merits of the individual City defendants' argument that they are qualifiedly immune to suit with respect to plaintiffs' § 1983 claim. Instead, plaintiffs contend that the summary judgment motion "should be denied on the basis of laches." Affirmation of William M. Kunstler, Esq., Counsel for Plaintiffs, dated October 22, 1991 ("Kunstler Aff."), ¶ 2. Specifically, plaintiffs argue that

It would seem that, under any reasonable interpretation of the doctrine of laches, the City defendants should not be permitted to assert contentions which could have been raised at least five years ago. They now seek to dismiss the complaint on grounds that were readily available to them in late 1986 or early 1987, or, with reference to the Second Circuit opinion, more than a year ago. They chose to sit by, even after the federal defendants had filed their Notice of Appeal two years ago, and merely await the outcome of that appeal.

Kunstler Aff., ¶ 9. Plaintiffs' reliance on the doctrine of laches is, however, misplaced. As the Second Circuit has explained:

Historically laches developed as an equitable defense based on the Latin maxim *vigilantibus non dormientibus aequitas subvenit* (equity aids the vigilant, not those who sleep on their rights). In contrast to a statute of limitations that provides a time bar within which suit must be instituted, laches asks whether the plaintiff in asserting her rights was guilty of unreasonable delay that prejudiced the defendants. The answers to these questions are to be drawn from the equitable circumstances peculiar to each case.

*Stone v. Williams,* 873 F.2d 620, 623–24 (2d Cir.) (citations omitted), *reh'g granted; vacated on other grounds,* 891 F.2d 401 (2d Cir.1989), *cert. denied,* 496 U.S. 937, 110 S.Ct. 3215, 110 L.Ed.2d 662 (1990). Plaintiffs have cited no legal authority, nor

---

**3.** *Cf. United States v. Uccio,* 940 F.2d 753, 757 (2d Cir.1991) (quotation omitted):

The law-of-the-case doctrine has several branches; one deals with decisions of a lower court that have been ruled on on appeal.... Under the first branch of the doctrine, the trial court is barred from reconsidering or

modifying any of its prior decisions that have been ruled on by the court of appeals. When an appellate court has once decided an issue, the trial court, at a later stage in the litigation, is under a duty to follow the appellate court's ruling on that issue.

is the Court aware of any, for the proposition that a defendant in a pending civil action may be barred from moving for summary judgment because the defendant did not bring such a motion at an earlier point in the litigation. Indeed, such a proposition is nonsensical, because the very purpose Rule 56 is to avoid an unnecessary trial on the merits; if a defendant is entitled to summary judgment because there are no genuine issues of material fact in dispute and the defendant is entitled to judgment as a matter of law, it would be preposterous to deny the motion on the ground that it could have been brought earlier and to require that the defendant go through a trial on the merits for a claim on which the plaintiff cannot prevail. In any event, plaintiffs' contention conflicts with the explicit text of Rule 56(b), which provides that a party against whom a claim is asserted may "at any time" move for summary judgment as to all or any part of that claim, and the Court rejects plaintiffs' argument that the individual City defendants' summary judgment motion should be denied on the basis of laches. Accordingly, the individual City defendants' motion for summary judgment on the § 1983 claim is granted.

■ The individual City defendants have also moved for summary judgment on plaintiffs' pendent state law tort claims for assault, battery, and intentional infliction of emotional distress, on the ground that plaintiffs have failed to satisfy the notice of claim requirements of N.Y.Gen.Mun. Law § 50–e and § 50–i.[4] Plaintiffs do not dispute that they have failed to comply with the notice of claim requirements or that such failure requires dismissal of their pendent state law tort claims, and, as discussed above, the Court rejects plaintiffs' contention that the summary judgment motion should be denied on the basis of laches. Accordingly, the individual City defendants' motion for summary judgment on the pendent state law tort claims is granted.

4. There is no dispute among the parties that New York law applies to the pendent tort

*Conclusion*

For the reasons stated above, the individual City defendants' motion pursuant to Fed.R.Civ.P. 56 for summary judgment on the remaining claims against them is granted. Plaintiffs' complaint is hereby dismissed in its entirety.

SO ORDERED.