**Nonna OSIPOVA, Plaintiff,**

v.

**David DINKINS, et al., Defendants.**

**No. 92 Civ. 8959 (JES).**

United States District Court,
S.D. New York.

Oct. 6, 1994.

---

Nonna Osipova, pro se.

O. Peter Sherwood Corp. Counsel, New York City (R. Townsend Davis, Jr., of counsel), for defendant Martinez.

### MEMORANDUM OPINION AND ORDER

SPRIZZO, District Judge.

Defendant Elmer Martinez moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, based on qualified immunity. For the reasons that follow, the motion is granted.

### BACKGROUND

In or about November 1992, plaintiff Nonna Osipova ("Osipova") lived in an apartment at 222 Edgecombe Avenue in New York City. *See* Verified Complaint ¶¶ 4, 6. This action arises from a dispute over the conduct of Osipova's landlord and the police in repairing a leak in that building.

Osipova alleges that on or about November 20, 1992, at 3:00 p.m., water began to leak into her apartment. *See* Verified Complaint ¶ 15. Osipova alleges that she "went to the second floor and knocked on the door of the front apartment from which the water was coming." *See* Verified Complaint ¶ 15. When no one answered, she called 911. *See* Verified Complaint ¶ 16. Upon the Fire De-

partment's arrival, "the firemen were told by a man in the rear second floor apartment that he was taking care of the leak." *See* Verified Complaint ¶ 17.

Nevertheless, at 7:00 p.m., the "leaks" turned into what Osipova describes as a "water-fall of black foamy water," and Osipova once again called 911. *See* Verified Complaint ¶ 18. The Fire Department returned and this time turned off the water; subsequently, however, a tenant who lived in the basement ("Ralph Roe") turned the water back on. *See* Verified Complaint ¶ 18. On November 21, 1992, at 5:00 a.m., Osipova called 911 again, the Fire Department again turned off the water and Ralph Roe again turned it on. *See* Verified Complaint ¶ 19. Osipova called 911 for a fourth time and asked that the police arrest Ralph Roe. *See* Verified Complaint ¶ 20. They did not do so. *See* Verified Complaint ¶ 20.

Thereafter, Osipova filled a bucket with water from the leak and poured it into a hole leading to Ralph Roe's apartment. *See* Affirmation of Nonna Osipova dated December 7, 1993 ("Osipova Aff."), ¶ 13. Osipova alleges that only then did he immediately turn off the water. *See* Osipova Aff. ¶ 13.

On November 23, 1992, Juliette Clarke ("Clarke"), the landlord and a co-defendant in this action, knocked on plaintiff's door and demanded access to Osipova's apartment so that a plumber could fix the leak and restore water and heat to the building. *See* Osipova Aff. ¶ 7. When plaintiff refused to open the door, Clarke called the police. *See* Osipova Aff. ¶ 9. When Police Officer Elmer Martinez ("Martinez") arrived, Clarke informed him that water from Osipova's apartment had leaked into the boiler room resulting in a lack of heat and hot water for the whole building. *See* Osipova Aff. ¶ 5; Martinez Dep. at 14, 17, 18, 20, 23. Martinez knocked on Osipova's door and identified himself as a police officer but was also denied entry. *See* Osipova Aff. ¶ 7; Martinez Dep. at 19, 35. After summoning a sergeant, Martinez again asked Osipova to open her door, but she refused. *See* Verified Complaint ¶ 24; Martinez Dep. at 23.

Plaintiff then claims that Martinez used force to open the door and enter the apartment "under [a] pretense to provide access to a 'plumber' for a search of leaks though there was no evidence or suspicions that there was a leak in [her] apartment [sic]." *See* Verified Complaint ¶ 29. Osipova was frightened by this situation and requested that Martinez remain with her in the apartment until the plumber was finished. *See* Verified Complaint ¶ 24. After Martinez refused to do so, Osipova fled from her apartment, to which she claims she has not since returned. *See* Verified Complaint ¶¶ 25, 26. Shortly after this episode, Osipova also called the A.S.P.C.A. to request that it remove her cats from her apartment but they refused. *See* Verified Complaint ¶ 46.

Osipova then brought this action against David Dinkins, Lee Brown, Raymond Kelly, the City of New York, Elmer Martinez, the Officers of the 30th Precinct ("City Defendants"), Juliette Clarke, Ralph Roe, Jane Roe and the A.S.P.C.A. pursuant to 42 U.S.C. § 1983 and various state statutes alleging violations of her civil rights. By Order dated September 14, 1993, the Court dismissed all claims against the A.S.P.C.A. and the City Defendants, except the Fourth Amendment claim against Martinez for entering into the plaintiff's apartment without permission. Defendant Martinez now moves for summary judgment dismissing the Fourth Amendment claim on the ground that he is entitled to qualified immunity.

## DISCUSSION

Qualified immunity has long shielded government officials performing discretionary functions "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). In the oft-quoted words of Justice Scalia in *Anderson v. Creighton*, 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987), "whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action ... assessed in light of the legal rules that were 'clearly

established' at the time it was taken." *Id.* at 639, 107 S.Ct. at 3038 (quoting *Harlow,* 457 U.S. at 819, 102 S.Ct. at 2738); *accord Krause v. Bennett,* 887 F.2d 362, 368 (2d Cir.1989); *Robison v. Via,* 821 F.2d 913, 920–21 (2d Cir.1987).

■ Furthermore, the facts and circumstances of each case must be examined to determine whether "[t]he contours of the right ... [were] sufficiently clear that a reasonable official would understand that what he [was] doing violate[d] that right.... [I]n the light of pre-existing law the unlawfulness must be apparent." *Anderson, supra,* 483 U.S. at 640, 107 S.Ct. at 3039.

■ Specifically, with respect to an alleged Fourth Amendment warrant clause violation, the relevant inquiry focuses on "the objective (albeit fact-specific) question whether a reasonable officer could have believed [the] ... warrantless search to be lawful, in light of clearly established law and the information the searching officers possessed." *Anderson, supra,* 483 U.S. at 641, 107 S.Ct. at 3039.

■ The law is "clear" that absent exigent circumstances or consent, the Fourth Amendment's prohibition against "unreasonable" searches and seizures, *see* U.S. Const., Amend IV, requires that the police obtain a search warrant before entering a private residence. *See Soldal v. Cook County, Illinois,* —— U.S. ——, ——, 113 S.Ct. 538, 543, 121 L.Ed.2d 450 (1992) (in absence of exigency or consent, landlord's removal of a mobile home before eviction with aid of sheriff held to be "seizure" under the Fourth Amendment). The essential question in determining whether exigent circumstances justified a warrantless entry is "whether law enforcement agents were confronted by an 'urgent need' to render aid or take action." *See United States v. Gordils,* 982 F.2d 64, 69 (2d Cir. 1992) (quoting *United States v. MacDonald,* 916 F.2d 766, 769 (2d Cir.1990) (en banc), *cert. denied,* 498 U.S. 1119, 111 S.Ct. 1071, 112 L.Ed.2d 1177 (1991)). *See Illinois v. Rodriguez,* 497 U.S. 177, 179, 110 S.Ct. 2793, 2797, 111 L.Ed.2d 148 (1990) (consent); *Carroll v. United States,* 267 U.S. 132, 151, 45 S.Ct. 280, 284, 69 L.Ed. 543 (1925) (exigen-cy); *Chambers v. Maroney,* 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970) (exigency). An officer attempting to determine whether exigent circumstances exist, however, need not be accurate about all the facts of the situation at hand, but only reasonable in his perception:

> "Because many situations which confront officers in the course of executing their duties are more or less ambiguous, room must be allowed for some mistakes on their part. But the mistakes must be those of reasonable men, acting on facts leading sensibly to their conclusions of probability."

*Rodriguez, supra,* 497 U.S. at 185, 110 S.Ct. at 2800 (quoting *Brinegar v. United States,* 338 U.S. 160, 176, 69 S.Ct. 1302, 1311, 93 L.Ed. 1879 (1949)).

■ Moreover, "the question of qualified immunity is separate from the merits of the underlying action." *Washington Square Post No. 1212 v. Maduro,* 907 F.2d 1288, 1292 (2d Cir.1990); *see also Mitchell v. Forsyth,* 472 U.S. 511, 527–29, 105 S.Ct. 2806, 2816–17, 86 L.Ed.2d 411 (1985). In the procedural context of a motion for summary judgment based on qualified immunity, "factual allegations in the pleadings of the party opposing the motion ..., if supported by affidavits or other evidentiary material, should be regarded as true by the district court." *See Washington Square Post, supra,* 907 F.2d at 1292; *Burtnieks v. City of N.Y.,* 716 F.2d 982, 983–84 (2d Cir.1983). Thus, Martinez is only entitled to qualified immunity if, assuming the facts as set forth by the plaintiff, it was objectively reasonable for Martinez to believe, in light of clearly established law and the information he possessed at the time, that his warrantless entry into Osipova's apartment was lawful. *See Anderson, supra,* 483 U.S. at 641, 107 S.Ct. at 3039; *Dube v. State Univ. of N.Y.,* 900 F.2d 587, 597 (2d Cir.1990); *Robison, supra,* 821 F.2d at 920–21.

In this regard, it is undisputed that the landlord told Martinez that heat and water were inoperable in the building due to a leak in plaintiff's apartment. Def. Statement Pursuant to Local Rule 3(g); Osipova Aff. ¶ 5. The landlord also told Martinez that a

**364**

plumber was standing ready to repair any leaks in plaintiff's apartment, but plaintiff refused the plumber access to the apartment. Def. Statement Pursuant to Local Rule 3(g); Osipova Aff. ¶ 11; *see Washington Square Post, supra,* 907 F.2d 1288, 1290–91 (2d Cir. 1990) (objectively reasonable for law enforcement officers to believe that their warrantless search was lawful in light of information previously provided them by superior officer). Indeed, Martinez only forced open the door after summoning his superior, Sergeant Robert Zatz. Def. 3(g) ¶ 10–11; *see also Washington Square Post, supra,* 907 F.2d at 1290–91. Under these circumstances, in which Martinez was faced with the assertions of the landlord and tenants that there was a crisis in the building that required immediate redress, *see* Martinez Dep. at 18–19, the undisputed facts establish that there was an objectively reasonable basis for Martinez to believe there existed an exigency threatening the health and safety of the tenants such that he had the right to enter Osipova's apartment without a warrant. Accordingly, Martinez is entitled to qualified immunity.

### CONCLUSIONS

For the reasons stated above, defendant Martinez's motion for summary judgment shall be and hereby is granted. The Clerk of Court is directed to enter judgment dismissing the Complaint as to defendant Martinez. Plaintiff and the sole remaining defendant Clarke shall appear for a Pre–Trial Conference on October 28, 1994 at 10:30 AM in Courtroom 705.

It is **SO ORDERED.**