Robert JONES, Plaintiff,

v.

Correction Officers J. BISHOP and R. Hartung and Sing Sing Department of Correction, Defendants.

No. 91 Civ. 3836(JES).

United States District Court, S.D. New York.

Oct. 23, 1997.

Robert Jones, Comstock, NY, pro se.

Dennis C. Vacco, Attorney General of the State of New York, New York City (Carol Schechter, Assistant Attorney General, of counsel), for Defendants.

SPRIZZO, District Judge.

Pursuant to 42 U.S.C. § 1983 (1996), plaintiff Robert Jones, proceeding *pro se,* filed the instant action against Correction Officers John Bishop ("Bishop") and Robert Hartung ("Hartung"), and Sing Sing Department of Correction ("Sing Sing"). Defendants Bishop and Hartung move for summary judgment pursuant to Federal Rule of Civil Procedure 56(c). For the reasons that follow, defendants' motion is granted and the claims against Sing Sing, which is immune from suit under the Eleventh Amendment, are dismissed *sua sponte.*

## BACKGROUND

Plaintiff Robert Jones is a New York State prison inmate who was incarcerated at Sing Sing Correctional Facility at all times relevant herein. *See* Complaint ("Compl.") ¶ 1; Deposition of Robert Jones ("Jones Dep.") dated April 8, 1992, at 132.[1] Correction Officer Bishop was the Claims Officer and Correction Officer Hartung was the Officer–in–Charge of the Special Housing Unit ("SHU") at Sing Sing. *See* Affidavit of John Bishop ("Bishop Aff.") Sworn to September 16, 1992, ¶ 1; Affidavit of Robert Hartung ("Hartung Aff.") Sworn to November 23, 1992, ¶ 1.

On January 27, 1991, plaintiff was allegedly stabbed by another inmate, Eric Baez, during a "riot." *See* Compl. ¶ IV; Jones Aff. ¶ 1. Rather than report his injuries or request medical treatment, plaintiff returned to his cell that evening. *See* Jones Dep. at 23–24. The next day, plaintiff was observed swinging a sharp metal object at Baez, ap-

---

1. The deposition transcript of plaintiff was submitted to the Court unsworn. However, plaintiff indicated in a subsequent sworn affidavit which pages he desired corrected. *See* Affidavit of Robert Jones ("Jones Aff.") Sworn to May 21, 1992, ¶ 31.

parently intending to stab him. *See* Affidavit of Carol Schechter Sworn to October 27, 1992 ("Schechter Aff."), Exh. 1, Inmate Misbehavior Report. After a chase, plaintiff was apprehended and frisked by a Correction Officer who discovered a nine-inch shank in plaintiff's pants' pocket. *Id.* Immediately thereafter, plaintiff was taken to the hospital for an "assessment" of his stab wounds from the prior evening. *Id.*[2]

Plaintiff was served with a Misbehavior Report for violating the following rules: 109.10 (being out of place); 118.23 (failing to report injury): 100.13 (engaging in fighting); 100.15 (engaging in disorderly conduct); and 113.10 (making or possessing a weapon). *See* Defendants' Statement Pursuant to Local Rule 3(g) ("Defts' Rule 3(g) Stmt.") ¶ 2.

In accordance with applicable rules and regulations, plaintiff was placed in a hospital room pending a hearing on those charges, and the property in his cell was packed and itemized. *See* Defts' Rule 3(g) Stmt. ¶ 4. Plaintiff alleges that while he was being taken to the hospital, Correction Officers failed to lock his cell. As a result, plaintiff claims that his cell was burglarized and that stolen property was placed in it by inmates attempting to implicate him. *See* Affidavit of Robert Jones sworn to May 21, 1992 ("Jones Aff.") ¶ 4; Jones Dep. at 170.

On January 29, 1991, Bishop confiscated all articles of plaintiff's property, except legal papers and state-issued clothing, to conduct an investigation into the ownership of each item. *See* Defts' Rule 3(g) Stmt. 1 6; Jones Aff. ¶ 6; Bishop Aff. ¶ 10. Bishop asserts that plaintiff had not received certain property in any of the proper methods, *i.e.*, he had not possessed the property at the time of his transfer to Sing Sing, had not purchased it from the commissary, had neither received it by mail nor upon delivery from a visitor, and had not received the authorization that is required for inmates to receive property from other inmates. *See* Bishop Aff. ¶¶ 7–9. Bishop further states that the aforementioned property was reported as stolen by other inmates at the prison. *Id.* ¶ 11.

On January 29, 1991, Bishop filed a Misbehavior Report against plaintiff charging him with violating the following rules: 113.15 (accepting property from another inmate without authorization), 116.13 (stealing property or possessing stolen property), and 120.20 (gambling). *See* Defts' Rule 3(g) Stmt. ¶ 7; Bishop Aff. ¶¶ 13–14, Exh. 2.

On February 1, 1991, a Tier III disciplinary hearing was held, at which plaintiff was acquitted of violating Rule 109.10, but found guilty of violating all other counts, including the charges filed by Bishop. *See* Defts' Rule 3(g) Stmt. ¶ 3. Plaintiff was sentenced to 455 days in SHU, 451 days loss of packages, commissary and telephone usage, and 18 months loss of good time. *Id.* Shortly thereafter, he was escorted from the hearing to a cell in SHU. *See* Jones Aff. ¶ 8.

On February 2, 1991, plaintiff requested that his remaining property from the hospital be returned to him at SHU, but was allegedly told by defendant Hartung that his cell had been robbed of everything. *See* Jones Aff. ¶ 10. Presumably Hartung misunderstood plaintiff's request. On February 4, 1991, an unnamed Correction Officer returned plaintiff's watch and "Walkman" tapeplayer which had been confiscated from another inmate. *See* Jones Aff. ¶ 17.

In mid-February, plaintiff complained in a letter to Superintendent John P. Keane that defendant Bishop was depriving him of his property. *See* Compl. ¶ IV; Bishop Aff., ¶ 16. In response, Bishop interviewed plaintiff who explained that although his commissary and package privileges had been suspended since August 5, 1990, plaintiff had arranged a scheme whereby he sent money to another inmate to purchase items for him. *See* Bishop Aff. ¶ 17.

On March 6, 1991, plaintiff filed a grievance complaint claiming that Bishop had confiscated some of his property, that he was missing legal documents, that he was not receiving law library books in a timely manner, and that he was deprived of his hour of exercise. *See* Defts' Rule 3(g) Stmt. ¶ 13. On May 17, 1991, Superintendent Keane denied plaintiff's grievance, noting that plaintiff

---

**2.** At that time, Jones explained that his wounds were caused by a fall during the riot, not from a stabbing as he claims now. *See* Schechter Aff., Exh. 1.

stated that his problem with the law books had been resolved, and that SHU Sergeant Cecil O'Neil stated that plaintiff had a habit of delaying the return of law books, thereby denying him issuance of additional books. *Id.* ¶ 14.

On May 21, 1991, plaintiff filed the instant action reciting the events described above. In his complaint, plaintiff states, (1) that he was seriously stabbed in the back of his head, neck and back, which required stitching, but that no stitches were given; (2) that at some point he should have been x-rayed for internal bleeding since he began to wake up mornings with blood stains on his underwear around his genital area; (3) that officers neglected to secure his cell, allowing it to be tampered with; (4) that officers failed to return certain property to plaintiff; (5) that plaintiff had to endure days in SHU with just the clothes on his back and a very thin blanket in a cell which faced windows that were left open at night in February; (6) that defendants inflicted intentional emotional harm on plaintiff; (7) that defendants seized plaintiff's indictment papers; (8) that Hartung called plaintiff a "super-rape-po" and a "tree jumper;" (9) that Hartung interfered with plaintiff's law library privileges by picking up law books from his cell and deliberately misplacing them for very long periods of time; (10) that Hartung toyed with plaintiff's one hour recreational privilege; and (11) that plaintiff was denied due process because he was never served with a written notice of confiscation of his personal property from the possession of another inmate.

On April 8, 1992, defendants deposed plaintiff, who testified that during his confinement in SHU, he suffered from the cold for approximately two weeks during February, presumably until he received his person-

al effects from the hospital. *See* Jones Dep. at 146–47. According to plaintiff, the windows outside his cell were left open by Correction Officers, and he had only a short sleeve shirt and a thin blanket to keep warm. *Id.* Plaintiff testified that the other inmates in SHU were not affected because they had all of their personal effects, allowing them to put on long-johns, or sweats. *Id.* Plaintiff did not ask for additional blankets from Hartung, and testified that the only damage he suffered was depression. *Id.*

Plaintiff further testified that he believes he was singled out because he allegedly violated an inmate that Bishop new, and that Bishop and Hartung were buddies. *See* Jones Dep. at 144. Plaintiff surmised that Hartung had seen, or knew of the contents of his indictment for sodomy, since he had called him a "super-rape-po." *Id.* Plaintiff further testified that he does not seek the return of missing portions of his indictment, has not needed them, and could possibly have obtained a new copy of the document. *Id.* at 142. In addition, plaintiff testified that Hartung interfered with his law library privileges by picking up books from him which he did not immediately return to the library staff. *Id.* at 157. Consequently, plaintiff was delayed access to new books, which he alleges impeded his ability to review cases for his criminal appeal due approximately one year later. *Id.* at 163.[3]

Plaintiff testified that he is not seeking any relief based on injuries sustained from the alleged stabbing. *See* Jones Dep. at 29. Nor is he challenging the fairness of his disciplinary hearing, or asserting denial of due process with respect to his personal property. *Id.* at 109–11. The Court therefore deems those claims discontinued without prejudice.[4]

---

3. Pursuant to prison regulations, SHU inmates are permitted to borrow up to five books from the SHU's so-called "mini-law library" which are available for twenty-four hour periods on a first come, first serve basis. *See* Hartung Aff. ¶ 4, Exh. 1. In addition, SHU inmates may borrow up to four law books from the prison's regular law library, but may not have more than seven books out at one time from both libraries. *Id.* An inmate must have returned all other books on loan before he may borrow new ones. *Id.*

4. Defendants moved for summary judgment on November 30, 1992. However, defendants failed to comply with outstanding discovery requests, and the Court denied the motion without prejudice by Order dated March 29, 1994, with leave for defendants to re-file on the papers previously submitted once all outstanding discovery requests had been complied with.

At a Pre–Trial Conference held on May 12, 1995, defendants renewed their motion, relying on the original affidavits submitted by Bishop, Hartung, and counsel, along with their Rule 3(g)

## DISCUSSION

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment in favor of the moving party is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In considering a moving party's motion for summary judgment, the Court views all facts and construes all rational inferences derived therefrom in the light most favorable to the non-moving party. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). In this case, construing plaintiff's complaint liberally as the Court must, *see Haines v. Kerner*, 404 U.S. 519, 520–521, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972) and read in conjunction with his deposition testimony, *see Le Grand v. Evan*, 702 F.2d 415, 416 n. 3 (2d Cir.1983), his complaint must be dismissed.

■ Plaintiff's deposition testimony makes clear that the conditions of his cell in SHU are insufficient to support an Eighth Amendment claim. To support an Eighth Amendment claim, plaintiff must establish both an objective and subjective component. *See Branham v. Meachum*, 77 F.3d 626, 630 (2d Cir.1996) (citing *Davidson v. Flynn*, 32 F.3d 27, 29 (2d Cir.1994)). The objective component relates to the "seriousness of the injury," *Davidson*, 32 F.3d at 29, whereas the subjective component relates to whether the defendant "possessed a 'wanton' state of mind when engaging in the alleged misconduct." *See Branham*, 77 F.3d at 630 (citing *Hudson v. McMillian*, 503 U.S. 1, 6–7, 112 S.Ct. 995, 998–99, 117 L.Ed.2d 156 (1992)). Since plaintiff indicates in his deposition that other inmates remedied the cold experienced

by plaintiff by the simple expedient of wearing sweats or long-johns, and that the cold caused him depression only, the fact that certain windows may have been open in February does not meet the objective component. In any event, plaintiff certainly cannot show that Hartung, or any supervisory officials at Sing Sing, possessed a wanton state of mind in leaving windows open since there is no evidence in the record that plaintiff communicated to officials that he was cold or required additional blankets, or that other inmates experienced and communicated similar discomfort.

■ Furthermore, plaintiff's claims that he was called a "super-rape-po" and a "tree jumper", and was otherwise taunted by Hartung, are insufficient to form the basis for a claim under § 1983. *See Haussman v. Fergus*, 894 F.Supp. 142, 149 (S.D.N.Y.1995) (stating that taunts, insults and racial slurs do not comprise an infringement of constitutional guarantees); *Wright v. Santoro*, 714 F.Supp. 665, 667 (S.D.N.Y.) (stating that discriminatory statements reflecting racial prejudice are not actionable under § 1983 where not connected to any physical injury), *aff'd*, 891 F.2d 278 (2d Cir.1989). Nor has plaintiff provided any evidence supporting his claim that his recreational privileges were "toyed" with. As such, he has failed to demonstrate any violation of a constitutional right.

■ Plaintiff's claim that portions of his indictment were seized and that he was delayed access to law books also fails to state a claim under § 1983. Prisoners have a constitutional right of access to the courts, which requires prison officials to provide access to an adequate law library or adequate assistance from a person trained in the law. *See Bounds v. Smith*, 430 U.S. 817, 828, 97 S.Ct. 1491, 1498, 52 L.Ed.2d 72 (1977). To demonstrate a constitutional violation, a prisoner

---

Statement and Memorandum of Law. Plaintiff submitted two identical affidavits, one properly notarized, and one not. The affidavits' affirmations of service are dated May 21, 1992, and June 4, 1992, and thus were created, if not served, well before defendants submitted their affidavits, Rule 3(g) Statement, or Memorandum of Law in support of the motion. To that extent, the motion for summary judgment is technically unop-

posed, and the Court has received no further correspondence from plaintiff. Therefore, pursuant to Local Rule 3(g), the facts set forth in defendants Rule 3(g) Statement are deemed to be admitted. *See* Local Rule 3(g); *United States v. All Right*, 77 F.3d 648, 657 (2d Cir.), *cert. denied*, —— U.S. ——, 117 S.Ct. 67, 136 L.Ed.2d 28 (1996) (party's failure to controvert Rule 3(g) Statement treated as admission of those facts).

must show that he or she was injured or prejudiced, *i.e.*, that he or she was actually denied access to the courts. *See Hudson v. Robinson,* 678 F.2d 462, 466 (3d Cir.1982); *see also Sands v. Lewis,* 886 F.2d 1166, 1171 (9th Cir.1989) (if an inmate does not challenge the adequacy of a law library or legal assistance, he or she must show actual injury, in which an inmate was actually denied access to the courts). Plaintiff's deposition testimony, if believed, reveals that he suffered only a *de minimis* denial of access to the courts. First, while his indictment was missing for approximately two weeks, and returned with portions missing, plaintiff testified that he never needed the document, and believed that he could have obtained another copy had he faced such a need. Moreover, with respect to Hartung's alleged delay in returning books to the law library staff, plaintiff testified that the delay only caused a corresponding delay in new books being issued to him. Plaintiff's claim that such acts may have prejudiced his criminal appeal is belied by his testimony that his appeal papers were not ultimately due until more than one year later. That being so, plaintiff could not possibly have suffered actual prejudice from a delay of several days in receiving law books.

■ Plaintiff's suit against Sing Sing must also be dismissed under the Eleventh Amendment. While defendants' memorandum of law formally moves for summary judgment on behalf of Bishop and Hartung only, throughout the memorandum, counsel refers generally to "defendants," and in one sentence under the heading of the Eleventh Amendment states that "Sing Sing Department of Correction" is not an appropriate party in a § 1983 suit and the action should be dismissed as against it. *See* Memorandum of Law is Support of Defendants' Motion for Summary Judgment at 15. The Supreme Court has held that the Eleventh Amendment defense sufficiently partakes of the nature of a jurisdictional bar that it will hear that defense even when not raised in a trial court. *See Edelman v. Jordan,* 415 U.S. 651, 678, 94 S.Ct. 1347, 1363, 39 L.Ed.2d 662 (1974). Since it appears that counsel also intended to move on behalf of Sing Sing, and Sing Sing, as part of DOCS, a state agency,

is considered an arm of the State and stands in the same position as the State, the Court concludes that it should *sua sponte* dismiss all claims against Sing Sing as well. *See Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 100, 104 S.Ct. 900, 907–08, 79 L.Ed.2d 67 (1984); *see also Scott v. Coughlin,* 1990 WL 108383 at *5 (S.D.N.Y. July 26, 1990) (DOCS entitled to Eleventh Amendment immunity from suits under § 1983); *True v. New York State Department of Correctional Services,* 613 F.Supp. 27, 31 (W.D.N.Y.1984) (same).

## CONCLUSION

For the reasons set forth above, defendants Bishop's and Hartung's motion for summary judgment is granted and the claims against Sing Sing are dismissed *sua sponte.* The Clerk of the Court is directed to enter judgment accordingly and close the above-captioned action.

It is **SO ORDERED**.