## In re TOWERS FINANCIAL CORPORATION NOTEHOLDERS LITIGATION.

### No. 93 CIV. 0810 (WK)(AJP).

United States District Court,
S.D. New York.

Jan. 8, 1998.

Order Supplementing Memorandum
Jan. 20, 1998.

Daniel C. Girard, Girard & Green, LLP, San Francisco, CA, for Plaintiff.

Joseph E. Coughlin, Lord, Bissell & Brook, Chicago, IL, for Defendant.

1. We further note that the January 8, 1998 Memorandum and Order we incorrectly indicated that judgment should be entered against the defendants in the amount of $250,000. However, as

*MEMORANDUM AND ORDER*

WHITMAN KNAPP, Senior District Judge.

On December 11, 1997, Magistrate Judge Andrew J. Peck issued a Report and Recommendation ("the Report") recommending that we grant plaintiffs' uncontested motion for summary judgment against defendants Steven Hoffenberg, Marvin Basson, Arthur Ferro and Charles Chugerman based on their convictions on guilty pleas to criminal violations of the security laws. No objections have been filed.

Finding the Report reasonable, we adopt it in its entirety. Accordingly, plaintiffs' motion is granted; the Clerk is directed to enter judgment in the amount of $250,000 against each of these four defendants.

**SO ORDERED.**

*SUPPLEMENTAL MEMORANDUM
AND ORDER*

On January 8, 1998, having received no objections and finding it to be imminently reasonable, we issued a Memorandum and Order adopting the December 11, 1997 Report and Recommendation by Magistrate Judge Andrew J. Peck ("the report"). We have since received objections from defendant Steven Hoffenberg, against whom the Report recommended entry of summary judgment. Aside from being untimely, upon consideration we find these objections unpersuasive. Accordingly, we affirm our original order adopting the Report, and direct entry of judgment against defendants Steven Hoffenberg, Marvin Basson, Arthur Ferro and Charles Chugerman in the amount of $250 million.[1]

**SO ORDERED.**

indicated above, and in Magistrate Judge Peck's report, the correct amount of judgment again each defendant is $250 million.

## REPORT AND RECOMMENDATION

PECK, United States Magistrate Judge.

Plaintiffs in this securities class action move for summary judgement against defendants Steven Hoffenberg, Marvin Basson, Arthur Ferro and Charles Chugerman, based on those defendants' convictions on guilty pleas to criminal violations of the securities laws. Defendant Chugerman has filed a letter stating that he has no opposition to the motion. The other defendants have not responded to the motion. For the reasons set forth below, the Court recommends that plaintiffs' summary judgment motion be granted and judgment for $250 million be entered against each of these four defendants.

### FACTS

This uncontested motion is part of a series of actions brought against Towers and it officers and directors arising from the "Ponzi scheme" involving Towers' Notes and Bonds, more fully described in several prior opinions of this Court, familiarity with which is assumed.[1]

In February 1993, the SEC sued Towers and various of its officers and directors for violation of Section 10(b) of the Securities Exchange Act of 1934 and Rule 16b–5. (Pls.' Rule 56.1 Statement ¶ 2.) The first of several class action suits, all of which were later consolidated, was filed shortly thereafter. (Id. ¶¶ 3–4.) By Report and Recommendation dated November 25, 1997, the Court recommended certification of the plaintiff class.

### The Defendants

Defendant Steven Hoffenberg was Chief Executive Officer, President and Chairman of the Board of Towers and controlled 71% of Towers' common stock. (Pls.' 56.1 Stmt. ¶ 5.) Hoffenberg was intimately involved in Towers' daily operations and participated in the drafting of Towers' financial statements, annual reports and Offering Memoranda. (Id. ¶ 6.)

Defendant Charles Chugerman was the Executive Vice President, Secretary and a member of the Towers Board of Directors. (Id. ¶ 8.) He acquiesced in the issuance of the false offering material distributed to Noteholders. (Id. ¶¶ 9–10.)

Defendant Arthur Ferro headed the Towers accounting department, prepared Towers' fraudulent books and records, and was actively involved in the scheme to defraud investors. (Id. ¶¶ 11–12.)

Defendant Marvin Basson was a certified public accountant who prepared Towers' fraudulent audited financial statements for the years 1986 through 1992. (Id. ¶ 13.)

The complaint charges these defendants with, *inter alia*, violations of § 10(b) and Rule 10b–5, and common law fraud. (Id. ¶¶ 16–17; *see* Cplt. ¶ 234.) Plaintiffs now move for summary judgment against defendants Hoffenberg, Chugerman, Ferro and Basson, based on their guilty pleas in their related criminal cases. (*See* Pls.' 56.1 Stmt. ¶ 18.)

### Defendant Hoffenberg's Guilty Plea and Allocution

On April 13, 1995, Hoffenberg was charged with, *inter alia*, conspiracy to commit securities fraud in violation of § 10(b) and SEC Rule 10b–5. (Id. ¶¶ 25–26.) Hoffenberg pled guilty to this count (id. ¶¶ 27, 34–35), and allocuted:

[Towers' accountants] issued false financial statements where they inflated, with the cooperation of the Towers' people and myself, my involvement, the assets of Towers Financial Corporation. They were inaccurate and were used in order to sell the bonds and notes and debentures.

---

1. *E.g., SEC v. Towers Fin. Corp.*, 205 B.R. 27 (S.D.N.Y.1997); *Wechsler v. Squadron, Ellenoff, Plesent & Sheinfeld LLP*, 201 B.R. 635 (S.D.N.Y. 1996); *LaSalle Nat'l Bank v. Duff & Phelps Credit Rating Co.*, 951 F.Supp. 1071 (S.D.N.Y.1996); *In re Towers Fin. Corp. Noteholders Litig.*, 93 Civ. 0810,1996 WL 393579 (S.D.N.Y. July 15, 1996); *SEC v. Towers Fin. Corp.*, 93 Civ. 0744, 1996 WL 288176 (S.D.N.Y. May 31, 1996); *SEC v. Towers Fin. Corp.*, 93 Civ. 0744, 1996 WL 406685 (S.D.N.Y. March 26, 1996); *Shain v. Duff & Phelps Credit Rating Co.*, 915 F.Supp. 575 (S.D.N.Y.1996); *In re Towers Fin. Corp. Noteholders Litig.*, 93 Civ. 0810, 1995 WL 571888 (S.D.N.Y. Sept.20, 1995), *report & rec. adopted & modified*, 936 F.Supp. 126 (S.D.N.Y.1996).

(*Id.* ¶ 35; Stamell Aff. Ex. B: Hoffenberg 4/20/95 Plea Allocution Tr. at 18, 24.) Hoffenberg admitted that he knew of the inaccuracy at the time. (Pls.' 56.1 Stmt. ¶¶ 36–37; Stamell Aff. Ex. B at 24.) Hoffenberg further admitted that "he knew that the financial statements overstated the assets of Towers, overstated its revenues, and that the prospectuses mailed to investors included those financial statements and also misrepresented how the proceeds of the notes and bond sales were going to be used by Towers." (Pls.' 56.1 Stmt. ¶ 42; Stamell Aff. Ex. B at 28–29.)

### Defendant Chugerman's Guilty Plea and Allocution

Defendant Chugerman also was charged with, and pled guilty to, *inter alia*, criminal conspiracy to commit securities fraud. (Pls.' 56.1 Stmt. ¶¶ 46, 51–55; Stamell Aff. Ex. C: Chugerman 9/28/94 Plea Allocution Tr.) Chugerman allocuted as follows:

"During my employment at Towers Financial Corporation, *I, participated in a conspiracy with others to fraudulently induce investors to purchase securities issued by Towers,* including promissory notes issued by Towers, from 1988 through 1993, and Healthcare receivable-backed bonds issued by Towers from 1990 through 1992.

"In furtherance of this conspiracy, I prepared, and instructed others to prepare, false computer runs purporting to reflect the status of accounts receivable Towers had purchased, as well as accounts receivables Towers had agreed to collect on a contingency basis.

"*I knew that the false information contained in these computer runs would be used to, among other things, support financial statements which materially overstated Towers' assets, revenue and income.*

"*I further knew that those false financial statements would be relied upon by investors purchasing Towers notes and bonds.*

"I also knew that Towers was misusing the proceeds of the sales of the notes and bonds, and that the false computer runs I produced would conceal that misuse from the investors. . . .

"I prepared the false records referred to above at Towers' offices in Manhattan.

"I knew the false information I and others at Towers caused to be generated would be circulated to investors through the United States mails. . . .

"This ultimately resulted in Towers keeping millions of dollars in collection revenues that should have gone to its clients. . . .

"During the course of my participation in the securities fraud, the conspiracy charged in Count One, the mail fraud scheme charged in Count Two, and the obstruction of justice charged in Count Three, *I knew that what I was doing was illegal.*"

(Pls.' 56.1 Stmt. ¶¶ 55–56, quoting Stamell Aff. Ex. C: Chugerman 9/28/94 Plea Allocution Tr. at 14–16, emphasis added.)

### Defendant Ferro's Guilty Plea and Allocution

Defendant Ferro was charged with, and on November 29, 1994 pled guilty to, *inter alia*, conspiracy to violate the securities law. (Pls.' 56.1 Stmt. ¶¶ 59–61.) He allocuted as follows:

"I have been a certified public accountant since 1971. From 1987 through April 1993, I was retained by Towers Financial Corporation as an independent contractor except for the period from about September of 1989 through about May of 1990 when I was employed as Tower's [sic] chief financial officer.

"During my work at Towers Financial Corporation *I participated in a conspiracy with others to fraudulently induce investors to purchase securities issued by Towers, including promissory notes* issued by Towers from 1988 through 1993 and healthcare receivable-backed bonds issued by Towers from 1990 through 1992.

"In furtherance of this conspiracy I made entries in Towers' books and records, including its general journal and general ledger, that I knew were false. Each year at the direction of Steven Hoffenberg, Towers' chief executive officer, I recorded

Towers' income to be millions of dollars higher than I believed it to be.

"As I discussed with my co-conspirators, the principal reason for making these false and fraudulent income entries was to facilitate the sales of Towers' notes and bonds. I prepared these false records at Towers' offices in Manhattan. *I knew that the false information I placed in Towers' books and records would be used to, among other things, support financial statements which themselves materially overstated Towers' assets, revenue and income.*

"*I also knew that the false financial statements I helped prepare would be circulated to investors throughout the United States mails.* In addition, I knew that Towers' financial statements stated that Towers used a revenue recognition method called the 30–30 rule.

"Under the 30–30 rule Towers assumed that it would collect 30 percent of the aggregate balances of any account assigned to it for collection, and Towers therefore accrued as gross revenue at the time of assignment 30 percent of that amount as its collection fee.

"During the relevant time period I knew that this rule had no basis in fact and that the revenues described in the financial statements were grossly overstated.

"In addition, during the relevant time period, I knew that Towers was misusing the proceeds of the sales of the notes and bonds and that the false entries I made would conceal that misuse from investors.

"During the course of my participation in this securities fraud conspiracy charged in Count 1, *I knew that what I was doing was illegal.*"

(Pls.' 56.1 Stmt. ¶ 61, quoting Stamell Aff. Ex. D: Ferro 11/29/94 Plea Allocution Tr. at 11–13, emphasis added.)

### Defendant Basson's Guilty Plea and Allocution

Finally, defendant Basson was charged with, and on December 1, 1994 pled guilty to, *inter alia*, conspiracy to commit securities fraud in violation of § 10(b) and SEC Rule 10b–5. (Pls.' 56.1 Stmt. ¶¶ 62–65.) Basson allocuted as follows:

"I've been a certified public accountant and attorney since 1959. During the years 1987 through 1992, I was retained by Towers Financial Corporation in my capacity as an accountant to certify Towers' financial statements. During this time period, I knew that Towers used a revenue recognition method called a thirty thirty rule. Under the thirty thirty rule, Towers assumed that it would collect thirty percent of the aggregate balances of any accounts assigned to it for collection, and Towers therefore accrued as gross revenue at the time of assignment thirty percent of that amount as its collection fee.

"Part of my job as *the accountant certifying the Towers financial statements* was to make sure that the Towers books and records evidence a history of collecting accounts receivable and obtaining fees for doing so which justified the use of this thirty thirty revenue recognition method. In the fall of each year of the years 1988 through 1992, I signed a letter stating, among other things, that I had audited Towers' financial statements in accordance with generally accepted auditing standards.

"I further stated in my letters that it was my opinion that for each of the years of 1988 through 1992, Towers' financial statements represented fairly, in all material respects, Towers' financial position and the results of its operations and cash flows for each of those years. I authorized the use of my signature on the certification letters at Towers' offices in Manhattan. *My certification for each of the years 1988 through 1992 were false*, because in none of those years did the Towers management provide me with sufficient books or records to enable me to conduct an audit of Towers' experience in collecting accounts receivable for its clients, and in obtaining contingency fees.

"Initially, members of Towers' management assured me that Towers would provide me with the relevant books and records, but they did not do so, and I knew prior to the conclusion of the audits for the

years 1990 through 1992 that no such records would be given to me. In each of these years, 1988 through 1992, I did not perform the audits as I represented and had no basis for rendering an opinion that Towers' financial statements, including its use of the thirty thirty revenue recognition, represented fairly Towers' operation and cash flows.

"Indeed, based on my discussions and interaction with various members of the Towers' senior management, I came to believe that *Towers' financial statements were fraudulently prepared.* From 1988 through 1992, I knew that Towers was issuing the promissory notes described in paragraph three of the information and that the investors purchasing those notes would receive copies of Towers' financial statements, including my letter certifying those statements.

"In addition, *I knew that the financial statements and certifications would be circulated to investors through the United States mails.* During the course of my participation in the securities fraud conspiracy charged in Count I, *I knew that what I was doing was illegal....* "

(Pls.' 56.1 Stmt. ¶ 65, quoting Stamell Aff. Ex. E: Basson 12/1/94 Plea Allocution Tr. at 8–10, emphasis added.)

### Damages

As of April 1996, the Bankruptcy Court determined, based on proofs of claims filed, that the Noteholders' valid claims totalled $278,208,476. (Pls.' 56.1 Stmt. ¶ 76.) The Informations relating to defendants Hoffenberg, Chugerman, Ferro and Basson, to which each pled guilty, refer to the sale of in excess of $250 million of Towers' Notes. (*Id.* ¶¶ 77–78.) Accordingly, plaintiffs, summary judgment motion seeks a judgment for $250 million against each defendant.

### Defendants Have Not Responded to Plaintiffs' Summary Judgment Motion

Plaintiffs brought their summary judgment motion on July 24, 1997. Under the "Rules of Practice Before Magistrate Judge Andrew J. Peck," responses were due two weeks after service of the motion. When the Court still had not received any responses by August 14, 1997, "in an excess of caution, the Court [gave] defendants until September 5, 1997 to submit responsive papers." (8/14/97 Order.)

Defendant Chugerman's counsel responded that as a consequence of his guilty plea, "Mr. Chugerman cannot and does not assert any defenses to the above captioned matter." (8/25/97 Letter from John Lawrence Kase, Chugerman's counsel, to the Court.) None of the other three defendants (Hoffenberg, Ferro or Basson) responded to plaintiffs' summary judgment motion.[2]

### *ANALYSIS*

### I. *PLAINTIFFS' SUMMARY JUDGMENT MOTION SHOULD BE GRANTED ON CONSENT AS TO DEFENDANT CHUGERMAN*

Defendant Chugerman responded to plaintiffs' summary judgment motion by conceding that he had no defense to the motion. (*See* 8/25/97 Kase Letter, quoted above.) Accordingly, plaintiffs' summary judgment motion should be granted on consent as to defendant Chugerman. *See, e.g., Silver v. I. Goldberg & Partners, Inc.,* 92 Civ. 6989, 1994 WL 392187 at *2 (S.D.N.Y. July 28, 1994) (granting default judgment against defendant who informed plaintiffs that it " 'no longer wishe[d] to defend itself in [the] action,' " and defaulted on the motion for summary judgment); *Chase Manhattan Serv. Corp. v. National Business Systems, Inc.,* 90 Civ. 5363, 1991 WL 220957 (S.D.N.Y. Oct.11, 1991) (granting plaintiff's summary judgment motion by default because defendant informed plaintiff that it did not intend to oppose the motion and did not file any opposition papers).

### II. *PLAINTIFFS' SUMMARY JUDGMENT MOTION SHOULD BE GRANTED AS TO DEFENDANTS HOFFENBERG, FERRO AND BASSON, ON DEFAULT, SINCE THEY DID NOT RESPOND TO THE MOTION*

Pursuant to Fed.R.Civ.P. 56(e), if the non-movant fails to respond to a summary

---

**2.** By letter dated August 24, 1997, Hoffenberg asked for an extension of time to respond. The Court gave Hoffenberg an extension until October ber 6, 1997 (9/3/97 Memo Endorsed Order), but Hoffenberg to date still has not responded to the motion.

judgment motion, "summary judgment, if appropriate, shall be entered against the adverse party." As the Second Circuit has announced:

> "litigants should be on notice from the very publication of Rule 56(e) that a party faced with a summary judgment motion 'may not rest upon the mere allegations or denials' of the party's pleading and that if the party does not respond properly, 'summary judgment, if appropriate, shall be entered' against him."

*Champion v. Artuz,* 76 F.3d 483, 485 (2d Cir.1996) (quoting *Graham v. Lewinski,* 848 F.2d 342, 344 (2d Cir.1988)).

Nevertheless, the Second Circuit has instructed that "summary judgment should not be entered by default against a pro se [party] who has not been given any notice that failure to respond will be deemed a default." *Champion v. Artuz,* 76 F.3d at 486; *see also, e.g., Ruotolo v. IRS,* 28 F.3d 6, 8–9 (2d Cir.1994); *Graham v. Lewinski,* 848 F.2d at 344–45; *Maggette v. Dalsheim,* 709 F.2d 800, 802–03 (2d Cir.1983). The notice should be "easily comprehensible" and inform the pro se party that "failure to respond" to the summary judgment motion "will be deemed a default." *E.g., Champion v. Artuz,* 76 F.3d at 486. The Second Circuit found satisfactory a notice that "expressly warned" the pro se party that (1) "under Rule 56(e) he could not simply rely on his complaint"; (2) if the pro se party did not respond to the motion with an affidavit or other evidence, the factual assertions in the moving party's affidavits would be accepted as true; (3) if the pro se party does "not provide the court with a short statement of any material facts as to which he contend]s] there existed a genuine issue, the court would accept the assertions of the [moving party's] Rule 3(g) [now S.D.N.Y. Local Rule 56.1] statement as true"; and (4) if the pro se party "did not respond to the motion with his own evidence, summary judgment could be granted against him." *Champion v. Artuz,* 76 F.3d at 486; *accord, e.g., Anderson v. Phoenix,* 95 Civ. 4605, 1997 WL 362255 at *2 (S.D.N.Y. June 27, 1997); *Reaves v. Williams,* 95 Civ. 0281, 1997 WL 10132 at *3 (S.D.N.Y. Jan.10, 1997);

*Dent v. Bliden,* 93 Civ. 5609, 1996 WL 721087 at *2 (S.D.N.Y. Dec.13, 1996).

Here, the Court explicitly notified defendants that failure to respond would result in plaintiffs' summary judgment motion being granted. The Court *sua sponte* gave defendants an extension of time to respond to the motion, and the Court's Order specifically referred defendants to paragraphs A, H and I of my Rules, a copy of which was attached to the Order. (8/14/97 Order.) Paragraph H of my Rules explicitly states:

### SUMMARY JUDGMENT MOTIONS (Pro Se Cases)

Plaintiff pro se is advised to carefully read Rule 56 of the Federal Rules of Civil Procedure. Plaintiff is further advised that, pursuant to Rule 56(e) of the Federal Rules of Civil Procedure, when a motion for summary judgment is made and properly supported, plaintiff may not simply rely upon the complaint, but plaintiff must respond by affidavits or as otherwise provided in that rule, setting forth specific facts showing that there is a genuine issue of material fact for trial. Any factual assertions in defendants' affidavits will be accepted by the Court as being true unless plaintiff submits affidavits or other documentary evidence contradicting defendants' assertions. *If plaintiff does not so respond, summary judgement, if appropriate, may be entered against plaintiff.* If summary judgment is granted against plaintiff, the case will be dismissed and there will be no trial.

Note also that S.D.N.Y. Local Civil Rule 56.1 requires plaintiff to include a separate short and concise statement of any material facts as to which plaintiff contends there exists a genuine issue. In the absence of such a statement, all material facts set forth in defendants' Local Civil Rule 56.1 statement will be deemed admitted.

*Failure to respond to defendants' summary judgement motion may result in the grant of summary judgement for the defendant, ending plaintiff's case.*

*See, e.g., Champion v. Artuz,* 76 F.3d 483, 485–86 (2d Cir.1996).

(Rules of Practice Before Magistrate Judge Andrew J. Peck, ¶ H, emphasis added.)[3]

This statement clearly gave defendants ample notice of the possibility of defaulting if they failed to respond.

In the Second Circuit, ordinarily "[t]he fact that there has been no response to a summary judgment motion does not ... mean that the motion is to be granted automatically. Such a motion may properly be granted only if the facts as to which there is no genuine dispute 'show that the moving party is entitled to a judgment as a matter of law.'" *Champion v. Artuz,* 76 F.3d at 486; *accord, e.g., Lediju v. New York City Dep't of Sanitation,* 173 F.R.D. 105, 110 (S.D.N.Y. 1997) (Peck, M.J.); *see also, e.g., Anderson v. Phoenix,* 1997 WL 362255 at *2; *Reaves v. Williams,* 1997 WL 10132 at *3.

Nevertheless, the courts in this Circuit have granted summary judgment by default where a party has failed to respond to the motion in violation of court rules and/or scheduling orders. *See, e.g., Canfield v. Van Atta Buick/GMC Truck, Inc.,* No. 408, Docket 97–7251, 1997 WL 606625 at *1, 4 (2d Cir. Oct.3, 1997) (affirming summary judgment ["SJ"] by default for failure to respond to the motion despite a local court rule that failure to respond to a motion is deemed consent to the motion); *Sea–Land Serv., Inc. v. Citihope Int'l, Inc.,* 176 F.R.D. 118, 121 (S.D.N.Y. 1997) (SJ where defendant failed to respond to plaintiff's Local Rule 56.1 statement, "a failure that independently results in the facts there set forth being deemed admitted"); *Lediju v. New York City Dep't of Sanitation,* 173 F.R.D. at 110–13 (SJ by default for plaintiff's failure to respond to defendant's SJ motion and failure to obey scheduling orders; "a summary judgment motion may be granted by default if the facts justify a dismissal for failure to prosecute"); *United Overseas Bank v. Marchand,* 87 Civ. 8572, 1996 WL 695902 at *4, 6–7, 10 (S.D.N.Y. Dec.4, 1996) (denying motion to vacate default judgment where defendants had failed to oppose plaintiff's SJ motion); *Martin v. Manufacturers Hanover Trust,* 94 Civ. 6183, 1996 WL 603937 (S.D.N.Y. Oct.22, 1996) (denying motion to amend judgment dismissing complaint for failure to prosecute, where plaintiff had received multiple extensions to file opposition to defendant's SJ motion and never did); *Firma Melodiya v. ZYX Music GmbH,* 94 Civ. 6798, 1996 WL 219672 at *1 (S.D.N.Y. May 1, 1996) (SJ by default against pro se defendants who failed to file opposition papers, after being warned that such failure would result in default); *G.A. Modefine S.A. v. Burlington Coat Factory Warehouse Corp.,* 919 F.Supp. 723, 725–26 (S.D.N.Y.1996) (default judgment against defendants who failed to respond to SJ motion by deadline set by Court); *Singh v. N.Y.C. Dep't of Corrections,* 93 Civ. 6204, 1995 WL 733560 at *1 (S.D.N.Y. Dec.12, 1995) (Peck, M.J.) (SJ against pro se plaintiff by default); *Stoute v. Rockefeller Foundation,* 93 Civ. 2628, 1995 WL 708690 (S.D.N.Y. Nov.30, 1995) (dismissing plaintiff's complaint for failure to prosecute where plaintiff failed to submit opposition papers to defendant's SJ motion); *United States v. Saet,* 93 Civ. 8330, 1995 WL 4016 at *2 (S.D.N.Y. Jan.5, 1995) (SJ by default where defendant failed to file opposition papers by date set by Court); *LaSalle v. Coughlin,* 893 F.Supp. 185, 187 (E.D.N.Y.1995) (SJ for defendants on pro se plaintiff's default; "'failure ... to oppose this motion is grounds for granting the motion by default.'"); *Wiltshire v. Consolidated Edison of New York,* 93 Civ. 8570, 1994 WL 637764 at *1 (SJ by default for plaintiff's failure to file opposition papers three months after the deadline had passed); *United States v. Cooper,* 93 Civ. 2699, 1994 WL 592669 at *1 (S.D.N.Y. Oct.27, 1994) (SJ by default where pro se defendant failed to op-

---

**3.** Paragraph I of my Rules further provides:

**I. *Summary Judgment Motions, Local Rule 56.1 Statements***

The S.D.N.Y. Local Civil Rule 56.1 statement must contain only one factual assertion in each numbered paragraph. Each factual assertion must be followed by a citation to the portion(s) of the evidentiary record relied upon, *e.g.,* "Sherlock Holmes lived at 221B Baker Street. (S. Holmes Deposition at p. 17; J. Watson Affidavit ¶ 2)." The response to the movant's Local Civil Rule 56.1 statement must contain numbered paragraphs tracking those in the movant's Rule 56.1 statement, and must specifically state what is admitted and what is denied, and the basis for any dispute, citing specifically the portion(s) of the evidentiary record relied upon.

pose plaintiff's SJ motion after three extensions); *TWI Int'l Inc. v. Vanguard Oil & Serv. Co.*, 84 Civ. 1665, 1994 WL 174036 (S.D.N.Y. May 4, 1994) (SJ by default where defendant failed to file opposition papers); *Smith v. Savings Bank of Rockland County*, 91 Civ. 3088, 1992 WL 350743 at *2 (S.D.N.Y. Nov.16, 1992) (SJ by default for plaintiff's failure to file opposing papers); *Santiago v. Sielaff*, 91 Civ. 0229, 1992 WL 230491 at *1–2 (S.D.N.Y. Sept.1, 1992) (denying plaintiff's motion to vacate SJ by default which was granted for plaintiff's failure to respond); *Washington Square Post No. 1212 v. City of New York*, 808 F.Supp. 264, 269 (S.D.N.Y. 1992) (noting that failure to comply with then Local Rule 3(b), requiring filing of a brief opposing motion, constitutes sufficient cause to grant SJ by default); *Chase Manhattan Serv. Corp. v. National Bus. Sys., Inc.*, 1991 WL 220957 at *1 (SJ by default for defendants' failure to file opposition papers); *Rem v. Caldrello*, 89 Civ. 8609, 1991 WL 123950 at *3–6 (S.D.N.Y. June 27, 1991) (Leval, J.) (denial of motion to vacate SJ by default against defendant who failed to respond to motions); *Liberty Mut. Ins. Co. v. Litwa*, 90 Civ. 805, 1991 WL 120236 (S.D.N.Y. June 21, 1991) (SJ by default against pro se defendant who failed to respond to motion after being ordered to do so); *Lukensow v. Harley Cars*, 124 F.R.D. 64 (S.D.N.Y.1989) (SJ by default where plaintiffs did not respond to the motion).

Defendants Hoffenberg, Ferro and Basson were given clear warning that the failure to file opposition papers could result in the granting of plaintiffs' summary judgment motion by default. The court-ordered deadline for submission of opposition papers has long passed, and no opposition papers (or requests for a further extension) have been received. Accordingly, I recommend that the Court grant plaintiffs' summary judgment motion by default against defendants Hoffenberg, Ferro and Basson.

### III. ALTERNATIVELY, PLAINTIFFS' SUMMARY JUDGMENT MOTION SHOULD BE GRANTED ON THE MERITS

■ The Court should not need to reach the merits of plaintiffs' summary judgment motion, which should be granted by default. Nevertheless, in an excess of caution, the remainder of this Report and Recommendation will address the merits of plaintiffs' summary judgment motion. The motion should be granted on the merits because there are no material facts in dispute.[4]

Section 10(b) of the Exchange Act and SEC Rule 10b–5 prohibit fraudulent activities in connection with the purchase or sale of securities, whether or not those securities are registered.[5]

In order to prevail on a claim of a violation of § 10(b) and Rule 10b–5, a plaintiff must prove that:

**4.** The summary judgment standards under Rule 56, Fed.R.Civ.P. are well-known and will not be set out here. *See, e.g., Watson v. McGinnis*, 981 F.Supp 815 at 816–819 (S.D.N.Y. 1997) (Peck, M.J.); *Mariani v. Consolidated Edison Co.*, 982 F.Supp. 267 at 271–273 (S.D.N.Y. 1997) (Peck, M.J.); *Mason Tenders Dist. Council Welfare Fund v. ITRI Brick & Concrete Corp.*, 96 Civ. 6754, 1997 WL 678164 at *10–11 (S.D.N.Y. Oct.31, 1997) (Peck, M.J.); *Hernandez v. New York City Law Dep't Corp. Counsel*, 94 Civ. 9042, 1997 WL 27047 at *6 (S.D.N.Y. Jan.23, 1997) (Peck, M.J.); *Burger v. Litton Indus., Inc.*, 91 Civ. 0918, 1996 WL 421449 at *7 (S.D.N.Y. April 25, 1996) (Peck, M.J.), *report & rec. adopted*, 1996 WL 609421 (S.D.N.Y. Oct.22, 1996) (Knapp, D.J.).

**5.** Section 10(b) makes it unlawful: "To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention or such rule and regulations as the Commission may prescribe...." 15 U.S.C. § 78j(b). Further, Rule 10b–5 provides that:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,

(a) To employ any device, scheme, or artifice to defraud,

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security. 17 C.F.R. § 240:10b–5.

"in connection with the purchase or sale of securities, the defendant, [2] acting with scienter, [3] made a false material representation or omitted to disclose material information and that [4] plaintiff's reliance on defendant's action [5] caused [plaintiff] injury."

*In re Time Warner Inc. Sec. Litig.*, 9 F.3d 259, 264 (2d Cir.1993) (quoting *Bloor v. Carro, Spanbock, Londin, Rodman & Fass*, 754 F.2d 57, 61 (2d Cir.1985)), *cert. denied*, 511 U.S. 1017, 114 S.Ct. 1397, 128 L.Ed.2d 70 (1994); *accord, e.g., In re Towers Fin. Corp. Noteholders Litig.*, 93 Civ. 0810, 1995 WL 571888 at *13 (S.D.N.Y. Sept.20, 1995) (Peck, M.J.), *report & rec. adopted & modified*, 936 F.Supp. 126 (S.D.N.Y.1996) (Knapp, D.J.); *see also, e.g., Herman & MacLean v. Huddleston*, 459 U.S. 375, 382, 103 S.Ct. 683, 687, 74 L.Ed.2d 548 (1983); *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193, 96 S.Ct. 1375, 1381, 47 L.Ed.2d 668 (1976); *In re Blech Sec. Litig.*, 961 F.Supp. 569, 579 (S.D.N.Y.1997).

Plaintiffs submitted a Local Rule 56.1 Statement setting forth the material undisputed facts relevant to the motion. The Local Rule 56.1 Statement was further supported by copies of the criminal Informations filed against, and the guilty plea allocution transcripts of, defendants Hoffenberg, Chugerman, Ferro and Basson. (*See* Stamell Aff. Exs. A–I.) Defendants did not file any response to plaintiffs' Rule 56.1 Statement, and therefore all of the facts in plaintiffs' Rule 56.1 Statement are deemed admitted. S.D.N.Y. Local Rule 56.1(c); [6] *see, e.g., United States v. All Right, Title & Interest in Real Property & Appurtenances*, 77 F.3d 648, 657–58 (2d Cir.) (by failing to submit opposing Local Rule 3(g), now Local Rule 56.1 Statement, defendant admits the facts set forth in plaintiff's statement), *cert. denied*, —— U.S. ——, 117 S.Ct. 67, 136 L.Ed.2d 28 (1996); *Champion v. Artuz*, 76 F.3d at 487 (summary judgment for defendants was proper because "accepting the assertions in the [moving] affidavits and Rule 3(g) statement as true," plaintiff failed to prove essential element of claim); *Maresco v. Evans Chemetics*, 964 F.2d 106, 111 (2d Cir.

1992) (because defendant did not respond to plaintiff's Rule 3(g) Statement, "Rule 3(g) requires they 'be deemed to be admitted' for purposes of summary judgment"); *Davidson v. Keenan*, 740 F.2d 129, 132 (2d Cir.1984) (district court properly decided motion based on uncontroverted statement of facts); *Sea–Land Serv., Inc. v. Citihope Int'l, Inc.*, 1997 WL 694957 at *3 (summary judgment for plaintiff where defendant had not "responded to plaintiff's Rule 56.1 statement, a failure that independently results in the facts there set forth being deemed admitted"); *Jones v. Bishop*, 981 F.Supp. 290, 294 n. 4 (S.D.N.Y. 1997) (facts set forth in movant's Rule 3(g) statement are deemed admitted when not opposed); *Capital Quest LLC v. Morales*, 96 Civ. 9135, 1997 WL 531311 at *1 (S.D.N.Y. Aug.27, 1997) (facts set forth in plaintiff's papers deemed true when defendant has filed no opposition papers); *Reaves v. Williams*, 1997 WL 10132 at *3 (factual assertions in defendants' 3(g) statement are accepted as true where plaintiff failed to respond); *RTC Mortgage Trust v. Polmar Realty, Inc.*, 91 Civ. 6685, 1996 WL 689281 at *1 n. 1 (S.D.N.Y. Nov.27, 1996) (as plaintiff's summary judgment motion is unopposed, all facts set forth in the complaint, affidavits and memorandum of law are deemed admitted).

Here, the undisputed facts in plaintiffs' Rule 56.1 statement provide a sufficient basis to grant summary judgment to plaintiffs on their Rule 10b–5 claim against each of defendants Hoffenberg, Chugerman, Ferro and Basson.

All four defendants pled guilty to, and allocuted to, conspiracy to violate § 10(b) and Rule 10b–5. (*See* Pls.' 56.1 Stmt. ¶¶ 34–66; *see also* plea allocutions quoted above.) Judge Knapp has held that the Supreme Court's opinion in *Central Bank of Denver v. First Interstate Bank*, 511 U.S. 164, 114 S.Ct. 1439, 128 L.Ed.2d 119 (1994), does not prohibit a private right of action for conspiracy to violate Rule 10b–5. *See In re Towers Fin. Corp. Noteholders Litig.*, 936 F.Supp. 126. The Second Circuit heard argument on

---

**6.** Local Rule 56.1(c) provides that: "All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party."

the interlocutory appeal from that decision on December 8, 1997. If Judge Knapp's conspiracy private right of action opinion is upheld by the Second Circuit, plaintiffs would be entitled to summary judgment on that theory against defendants Hoffenberg, Chugerman, Ferro and Basson, based on the undisputed facts, set forth in plaintiffs' Rule 56.1 statement, that those defendants pled guilty to criminal charges of conspiracy to violate Rule 10b–5.

■ But even if the appellate courts were to hold that no conspiracy theory private right of action exists after *Central Bank*, plaintiffs have presented undisputed (and un-refuted) evidence that these defendants violated Rule 10b–5.

Hoffenberg admitted that he was involved in issuing inflated financial statements, which he knew to be false, to investors in order to sell Towers' Notes. (Pls.' 56.1 Stmt. ¶¶ 35–37, 42; Stamell Aff. Ex. B: Hoffenberg 4/20/95 Plea Allocution Tr. at 18, 24, 28–29.)

Chugerman's plea allocution admitted that in connection with the sale of Towers Notes, he acted with scienter and prepared false financial statements which he knew would be, and were, circulated to and relied upon by investors, resulting in millions of dollars of losses to the Noteholders. (Pls.' 56.1 Stmt. ¶¶ 51–58; Stamell Aff. Ex. C: Chugerman 9/28/94 Plea Allocution at 14–16.)

Ferro admitted that he prepared false financial statements for Towers that materially overstated Towers' assets, revenue and income and that concealed from investors' Towers' misuse of the proceeds of Note and Bond sales; that he knew these false financial statements would be circulated to investors; and that he knew what he was doing was illegal, *i.e.*, he acted with scienter. (Pls.' 56.1 Stmt. ¶¶ 59–61; Stamell Aff. Ex. D: Ferro 11/29/94 Plea Allocution Tr. at 11–13.)

Defendant Basson admitted that his auditors' certifications of the Towers financial statements for each of the years 1988–1992 were false; that those false certificates and

false financial statements were mailed to investors who were purchasing Towers Notes; and that he knew that what he was doing was illegal. (Pls.' 56.1 Stmt. ¶ 62–66; Stamell Aff. Ex. E: · Basson 12/1/94 Plea Allocution Tr. at 840.)

In short, each of defendants Hoffenberg, Chugerman, Ferro and Basson admitted that in connection with the purchase and sale of securities (Towers Notes), he acted with scienter and made false representations or omitted to disclose material information about Towers' financial condition.[7] Because each of the defendants omitted to disclose material information, plaintiffs' reliance is presumed. *See, e.g., In re Towers*, 1995 WL 571888 at *18 (citing, *inter alia, Affiliated Ute Citizens v. United States*, 406 U.S. 128, 153–54, 92 S.Ct. 1456, 1472, 31 L.Ed.2d 741 (1972), and *In re Time Warner*, 9 F.3d at 267). Finally, plaintiffs' Rule 56.1 statement asserts that "Noteholders' losses were caused by the Individual Defendants' conduct." (Pls.' 56.1 Stmt. ¶ 72.) Thus, plaintiffs have established all of the elements of their Rule 10b–51 claim against defendants Hoffenberg, Chugerman, Ferro and Basson.

■ As to damages, after reviewing proofs of claim forms filed by Noteholders, the Bankruptcy Court determined that Noteholders' valid claims totalled $278,208,476. (Pls.' 56.1 Stmt. ¶ 76.) The criminal Informations to which defendants pled guilty refer to Towers' sale of "in excess of $250 million in" Notes. (Id. ¶¶ 77–78; *see* Stamell Aff. Exs. F–I.) To be conservative, plaintiffs' summary judgment motion seeks damages of $250 million. (*See, e.g.,* Stamell Aff. ¶ 7.) The $250 million sum plaintiffs request is both uncontested and reasonable under the circumstances. The Court, therefore, recommends that plaintiffs be granted summary judgment of $250 million in damages against defendants Hoffenberg, Chugerman, Ferro and Basson.

## CONCLUSION

For the reasons set forth above, the Court recommends that plaintiffs' summary judg-

---

7. Because the facts (including defendants' plea allocution admissions) alleged in plaintiffs' Rule 56.1 Statement have not been contested by defendants and establish violations of § 10(b) and Rule 10b–5, the Court need not address the collateral estoppel argument made by plaintiffs. (*See* Plfs.' Br. at 31–40.)

ment motion be granted, and a judgment of $250 million be entered against each of defendants Hoffenberg, Chugerman, Ferro and Basson.

## *FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION*

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from receipt of this Report to file written objections. *See also* Fed.R.Civ.P. 6. Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Whitman Knapp, 40 Centre Street, Room 1201, and to the chambers of the undersigned, 500 Pearl Street, Room 1370. Any requests for an extension of time for filing objections must be directed to Judge Knapp. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *IUE AFL—CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1054 (2d Cir.1993), *cert. denied,* 513 U.S. 822, 115 S.Ct. 86, 130 L.Ed.2d 38 (1994); *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993); *Frank v. Johnson,* 968 F.2d 298, 300 (2d Cir.), *cert. denied,* 506 U.S. 1038, 113 S.Ct. 825, 121 L.Ed.2d 696 (1992); *Small v. Secretary of Health & Human Servs.,* 892 F.2d 15, 16 (2d Cir.1989); *Wesolek v. Canadair Ltd.,* 838 F.2d 55, 57–59 (2d Cir.1988); *McCarthy v. Manson,* 714 F.2d 234, 237–38 (2d Cir.1983); 28 U.S.C. § 636(b)(1); Fed.R.Civ .P. 72, 6(a), 6(e).

### *SERVICE*

Mr. Stamell is to serve this Report and Recommendation on all counsel and all unrepresented parties, and file an affidavit of service with the Clerk's Office (with a courtesy copy to my chambers).

December 11, 1997.